## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LARRY M SCHLEE, | ) | CASE NO:    1:07 CV 487 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| JESSIE WILLIAMS, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. Petitioner, Larry M. Schlee, ("Schlee"), challenges the constitutionality of his conviction in the case of *State v. Schlee*, Case No. 92 CR 000517, Lake County, Ohio Court of Common Pleas.  Schlee filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 21, 2007 in the United States District Court for the Northern District of Ohio.  (Doc. No. 1.)  For the reasons set forth below, the Magistrate Judge recommends that the Petition (Doc. No. 1) be **DENIED**.

## I. STATEMENT OF FACTS

The state appellate court set forth the following facts on direct appeal of Schlee's retrial.  These factual findings "shall be presumed to be correct," and Schlee has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998):

{¶9} Appellant first met the decedent [Frank Carroll] while the two were in high school in 1966. Over the years, the two developed a close friendship. In 1977 or 1978, Carroll introduced appellant to Amy Binns Woodsby ("Woodsby"). Carroll and Woodsby were dating each other at that time.  However, by June 1979, Woodsby had become intimately involved with appellant, and the friendship between appellant and Carroll deteriorated.

{¶10} In the early morning hours of June 3, 1979, appellant's car was set on fire while he and Woodsby were at his home.  Appellant and Woodsby conveyed to the police that they believed Carroll had set the blaze.  Later that morning, Carroll appeared at appellant's home and began to assault Woodsby.  Appellant broke up the fight.  Carroll went to his car and returned with a rifle which he fired at appellant and Woodsby.  Appellant returned fire striking Carroll in the chin.  As a result of this incident, Carroll was charged with felonious assault, but appellant was not indicted as his actions were deemed to be "self defense."  Carroll's pretrial was scheduled for February 5, 1980.

{¶11} Woodsby testified that on February 2, 1980, appellant asked her to accompany him to a park to meet with Carroll.  Woodsby testified that prior to this date, appellant had expressed concern that Carroll would report appellant's drug dealing activities to the authorities in retaliation for proceeding with the felonious assault charge.  The meeting was allegedly for appellant and Carroll to resolve their differences and perhaps make a deal whereby appellant would dismiss the felonious assault charge if Carroll would refrain from reporting appellant's drug trafficking to the authorities.  After the alleged meeting occurred, no one ever saw Carroll alive again.

{¶12} According to Woodsby, at appellant's direction, she hid under a blanket in the back seat when they went to meet Carroll.  They arrived at the designated meeting place first and had to wait a few minutes for Carroll to arrive.  After Carroll arrived, Woodsby heard the two men talking and she testified that she thought they were working out their differences.  Then she heard shots being fired from a gun.  Her testimony was inconsistent as to whether she actually saw appellant fire his last shot at Carroll, or whether she stayed under the blanket and just heard the gun shots.  In either case, she testified that appellant told her not to tell anyone what had happened or that she would end up "just as dead as Frank."

{¶13} Woodsby stated that she saw appellant take a wallet and keys from Carroll's pockets, and he proceeded to first wrap the body in plastic, then into a sleeping bag, before sealing these wrappings with duct tape.  She then helped appellant put the body in the trunk of appellant's car.

{¶14} Appellant and Woodsby then drove Carroll's car and appellant's car to Cleveland Hopkins Airport where they parked Carroll's car on the top level of the parking deck.  Appellant put Carroll's wallet in the glove compartment, locked the doors, and took the keys with him. According to Woodsby, appellant wanted to make it look like Carroll had fled prosecution of the felonious assault charge.

{¶15} Woodsby testified that they drove east on Interstates 2 and 90 towards Pennsylvania to dispose of the body.  She stated that they dumped the body in a wooded area, and then returned to Ohio disposing of pieces of the murder

-2-

weapon along the way.

{¶16} The prosecution submitted appellant's 1993 trial testimony in its case in chief.  In the first trial, appellant testified that he spent the weekend of February 2, 1980, at his grandmother's house in Lake County.

{¶17} At some point shortly after the crime, Woodsby told her boss, John Turchik ("Turchik"), about the murder.  There is a dispute in the present proceeding as to whether that conversation took place on February 4, 1980 or two weeks later, on February 18 or 19, 1980, although the trial testimony in the second proceeding was consistent that this conversation occurred on February 4, 1980.

{¶18} During the summer of 1980, nearly seven months after Carroll had last been seen, his car was discovered parked in the airport garage, exactly where Woodsby testified that appellant had parked it.  Found in the glove compartment were the deceased's wallet and checkbook with a date of February 2, 1980 as the last entry in the register.

{¶19} In the fall of 1980, Woodsby and appellant moved to Arizona where they lived together, off and on, until early 1983.  After the two parted company, Woodsby, in April of 1983, wrote a letter describing the murder.  She gave the narrative to her lawyer in case anything happened to her.  Finally, in 1992, Woodsby contacted the Mentor, Ohio police department to report the murder of Carroll.

{¶20} Based upon the allegations made by Woodsby in 1992, a Lake County Sheriff's Deputy traveled to Westfield, New York, in order to inspect an unidentified skeleton, which had been discovered in October of 1981.  The body was wrapped in materials similar to those described by Woodsby. There were some personal effects on the body, which were later identified by Carroll's daughter as belonging to her father. The deputy testified that the route he took from Painesville to where the body was found in New York was very similar to the path described by Woodsby.  The identity of the body was also confirmed from dental records.

*State v. Schlee*, 2005 WL 2372763, at *1-*3 (Ohio App. Sept. 23, 2005).

## II.  PROCEDURAL HISTORY

**A.    State Conviction**

On September 28, 1992, a grand jury indicted Schlee on one count of

aggravated murder, in violation of Ohio Revised Code § 2903.01.  (ROW Exhibit 1.)

-3-

Schlee pleaded not guilty, and the matter proceeded to trial.  On March 31, 1993, the jury returned a guilty verdict, and the Court sentenced Schlee to life imprisonment with eligibility for parole after twenty years.  The state appellate court affirmed Schlee's conviction on direct appeal.  (ROW Exhibit 14 at ¶2-3, Case No. 93-L-082.)

On July 2, 2002, Schlee filed in the trial court a motion for a new trial based upon newly discovered evidence and prosecutorial misconduct.  (ROW Exhibit 14 at ¶4.) The trial court granted Schlee's motion on August 21, 2002.  (ROW Exhibit 2; Exhibit 14 at ¶4.)

On June 19, 2003, the trial court set a trial date of November 3, 2003.  On October 3, 2003, upon joint motion, the trial court continued the new trial until March 8, 2004.  (ROW Exhibit 14 at ¶4.)

On March 8, 2004, prior to the start of his new trial, Schlee filed a motion to dismiss the charge on the ground that the delay in trying his case had violated his right to a speedy trial.  (ROW Exhibit 4.)  The trial court denied Schlee's motion to dismiss. (ROW Exhibit 5.)  On March 19, 2004, a jury found Schlee guilty of aggravated murder. On March 26, 2004, the trial court sentenced Schlee to life imprisonment with eligibility for parole after serving fifteen years' imprisonment.  (ROW Exhibit 6, Case No. 92-CR-000517.)

On April 2, 2004, Schlee filed a motion for a new trial in the Lake County Court of Common Pleas.  (ROW Exhibit 7.)  The trial court denied Schlee's motion.  (ROW Exhibit 9.)

**B.    Direct Appeal**

On April 23, 2004, Schlee, through counsel, filed a timely notice of appeal in the state appellate court.  (ROW Exhibit 10.)  In his appellate brief, Schlee raised the

-4-

following assignments of error:

> 1. The trial court erred to the prejudice of the defendant-appellant and committed reversible error by giving the jury improper and misleading instructions.

> 2. The defendant–appellant's right to due process and a fair trial were substantially prejudiced by the ineffective assistance of counsel.

> 3. The trial court erred and/or abused its discretion to the prejudice of defendant/appellant when it denied his request for a new trial.

> 4. The trial court erred and/or abused its discretion to the prejudice of defendant–appellant when it did not grant appellant's motion to dismiss for violation of speedy trial -and- when it denied his motion to dismiss without conducting a hearing.

> 5. The trial court erred and/or abused its discretion and trial counsel was ineffective in other ways to the prejudice of defendant-appellant.

(ROW Exhibit 11.)  On September 26, 2005, the Court of Appeals affirmed the judgment of the trial court.  (ROW Exhibit 14, Case No. 2004-L-070.)

On November 4, 2005, Schlee filed a timely notice of appeal in the Supreme Court of Ohio.  (ROW Exhibit 21.)  In his memorandum in support of jurisdiction, Schlee set forth the following propositions of law:

> 1. The trial court committed reversible error and deprived appellant of his due process right to a fair trial when it (1) presented to the jury that their choice of verdict was either guilty beyond a reasonable doubt, or not guilty beyond a reasonable doubt (2) instructed the jury that they had to determine that appellant was not guilty of aggravated murder in order for them to consider the lesser included offense of murder (3) instructed the jury in a manner that improperly shifted the burden of proof to appellant to establish his alibi (4) tainted the jury's concept of reasonable doubt to such a degree that it rendered any concept or definition of reasonable doubt deficient and/or defective by the trial court's instruction that in order to find appellant not guilty they had to reach that verdict beyond a reasonable doubt.

> 2. Appellant was denied his due process right to a fair trial and effective assistance of counsel at a critical stage of the proceedings when his trial counsel failed to object to the erroneous and prejudicial jury instructions violating [the] Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

3. The trial court committed reversible error and deprived appellant of his due process right to a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution when it denied his request for a new trial.  Appellant presented newly discovered evidence that was material to his defense regarding the date on which the crime occurred.  That evidence was material and demonstrated that the crime charged did not occur on or about the time presented.  However, the trial court misunderstood its significance and that, even with the exercise of due diligence, appellant did not and could not obtain the new evidence prior to the conclusion of trial.

4. The trial court committed reversible error when it denied appellant's motion to dismiss, and when it failed to conduct a hearing, regarding the issue of the State's failure to bring him to trial in a timely fashion regarding his new trial, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 16 and 18; and Article IV, Section 5(B) of the Ohio Constitution, and Sections 1.43; 1.47; 2901.04; 2945.02; 2945.71; 2945.72; 2945.73; and 2945.82 of the Ohio Revised Code as well as Rule 1; 45(B) and 50 of the Ohio Rules of Criminal Procedure and his rights under due process and when it denied appellant a liberty interest protected by the Ninth Amendment to the United States Constitution, and Article I, Section 20 of the Ohio Constitution.

(ROW Exhibit 22.)  On February 22, 2006, the Supreme Court of Ohio denied Schlee leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (ROW Exhibit 24, Case No. 05-2081.)

**C.**    **Application for DNA Testing**

Meanwhile, on October 26, 2004, Schlee filed an application in the trial court to have DNA tests performed on hair strands found in the victim's watchband.  (ROW Exhibit 25.)  On November 16, 2004, the trial court denied Schlee's application.  (ROW Exhibit 26, Case No. 92-CR-000517.)

Schlee, through counsel, filed a timely notice of appeal in the state appellate court.  (ROW Exhibit 27.)  In his brief, Schlee raised the following assignment of error:

1.    The trial court erred and/or abused its discretion to the prejudice of defendant-appellant when it denied his application for DNA testing.

-6-

(ROW Exhibit 28.)  On May 15, 2006, the appellate court affirmed the judgment of the trial court.  (ROW Exhibit 30, Case No. 2004-L-207.)

Schlee filed a timely notice of appeal in the Supreme Court of Ohio.  (ROW Exhibit 31.)  In his memorandum in support of jurisdiction, Schlee raised the following proposition of law:

> 1. Was appellant denied his due process right to present a complete defense, and a fair trial under the United States and Ohio Constitutions when, pursuant to an order by the trial court for a DNA test, there was no DNA test conducted.

(ROW Exhibit 32.)  On October 4, 2006, the Supreme Court of Ohio denied Schlee leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (ROW Exhibit 34, Case No. 06-1225.)

**D.     Motion for Relief from Judgment Pursuant to Ohio Civil Rule 60(B)**

Meanwhile, on March 16, 2005, Schlee filed a "Motion for Relief from Judgment pursuant to Civ.R. 60(B)" in the trial court.  (ROW Exhibit 35.)  On April 8, 2005, the state filed a motion to dismiss.  (ROW Exhibit 36.)  On June 14, 2005, the trial court granted the State's motion to dismiss and dismissed Schlee's motion for relief from judgment.  The trial court found Schlee's motion was actually a petition for post-conviction relief pursuant to O.R.C. § 2953.21 and that Schlee's petition for post-conviction relief was untimely.  (ROW Exhibit 42, Case No. 92-CR-000517.)

On July 14, 2005, Schlee filed a timely notice of appeal in the state appellate court.  (ROW Exhibit 47.)  Through counsel, Schlee raised the following assignments of error:

> 1. The trial court erred and/or abused its discretion to the prejudice of defendant-appellant when it ruled on his Civ.R. 60(B) motion.

2. The trial court erred and/or abused its discretion to the prejudice of defendant-appellant when it recast his Civ.R. 60(B) as, and reviewed it under the standards applicable to a post-conviction petition.

3. The trial court erred and/or abused its discretion to the prejudice of defendant-appellant when it granted the State's untimely responses.

(ROW Exhibit 52.)  On June 26, 2006, the Court of Appeals affirmed the judgment of the trial court.  (ROW Exhibit 10.)

Schlee moved to vacate the trial court's order dismissing Schlee's motion for relief from judgment.  (ROW Exhibit 43.)  Schlee argued that the trial court lacked jurisdiction to rule on the motion.  (*Id.*)  The trial court denied Schlee's motion as moot. (ROW Exhibit 46.)  Schlee subsequently moved to dismiss his appeal because of lack of jurisdiction.  (ROW Exhibit 48.)   The State filed a brief in opposition (ROW Exhibit 49), to which Schlee filed a reply.  On January 23, 2006, the Court of Appeals overruled Schlee's motion.  (ROW Exhibit 51, Case No. 2005-L-105.)

On July 20, 2006, Schlee filed a notice of appeal in the Supreme Court of Ohio. (ROW Exhibit 57.)  In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. Whether appellant's substantial rights of due process were violated when the trial court, without jurisdiction, ruled on appellant's Civ.R. 60(B) motion for relief from judgment during the pendency of his direct appeal.

2. Whether appellant's substantial rights of due process were violated when the trial court recast his motion for relief from judgment, pursuant to Civ.R. 60(B), as a petition for post-conviction relief and whether the Ohio Constitution and United States Constitution were offended because of this violation.

3. Whether appellant's substantial rights were violated when the trial court granted the State's untimely motions that were not properly filed and when the State failed to serve appellant with proper notice.

(ROW Exhibit 58.)  On October 18, 2006, the Supreme Court of Ohio denied Schlee

-8-

leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (ROW Exhibit 53, Case No. 06-1374.)  However, the state appellate court certified the case in conflict with the ruling of another state appellate court.  The Supreme Court of Ohio agreed that conflict existed and accepted jurisdiction.  On February 12, 2008, the Supreme Court of Ohio affirmed the appellate court's ruling in Schlee's case.  *Ohio v. Schlee*, 117 Ohio. St. 3d 153, 882 N.E.2d 431 (2008).

**E.**  **Federal Habeas Corpus**

On February 21, 2007, Schlee filed a Petition for Writ of Habeas Corpus in this Court asserting the following grounds for relief:

> **GROUND ONE:** The trial court denied petitioner his right to fundamental fairness, due process and a fair trial as applied to the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution by giving erroneous and prejudicial instructions to the jury.
> **Supporting Facts:** The trial court instructed the jury that; (1) their choice of verdict was either guilty beyond a reasonable doubt or not guilty beyond a reasonable doubt; (2) they had to (first) determine that petitioner was not guilty of aggravated murder in order for them to consider the lesser included offense of murder; (3) improperly shifted the burden of proof to petitioner to establish his alibi; (4) tainted the jury's concept of reasonable doubt to such a degree that it rendered any concept or definition of reasonable doubt deficient an/or defective by the trial court's instruction that in order to find petitioner not guilty they had to reach that verdict beyond a reasonable doubt.
>
> **GROUND TWO:** Denial of effective assistance of counsel.
> **Supporting Facts:** Petitioner's trial counsel was ineffective at a critical stage of the proceedings when counsel failed to object to the erroneous and prejudicial instructions presented in "GROUND ONE" of this petition in violation of his right to effective assistance of counsel and due process as applied to the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.
>
> **GROUND THREE:** The trial court prevented petitioner from presenting a complete defense when it denied his request for a new trial in violation of the confrontation clause, due process and a fair trial as applied to the U.S. Constitution.
> **Supporting Facts:** Petitioner presented newly discovered evidence that was material to his defense regarding the alleged date on which the crime occurred.

-9-

That evidence was material and demonstrated that the crime charged did not occur "ON OR ABOUT" the time presented. However, the trial court misunderstood its significance and that, even with the exercise of due diligence, petitioner did not and could not obtain the new evidence prior to the conclusion of trial. The denial of petitioner's request to present this new evidence to a jury precluded petitioner from a meaningful testing of the prosecutor's case.

**GROUND FOUR:** Petitioner's Sixth Amendment right to a speedy trial and his due process rights under the U.S. Constitution were violated when his right to a U.S. Constitutional speedy trial was violated and his motion to dismiss was denied without a prior requested hearing.
**Supporting Facts:** On August 21, 2002, petitioner was granted a new trial. On August 26, 2002, petitioner made a demand in open court for a constitutional speedy trial. However, he remained in jail for 19 months before commencement of his trial on March 8, 2004. His due process rights were also violated when his request for discharge regarding the speedy trial violation was denied without hearing.

**GROUND FIVE:** Petitioner's due process rights were violated when his state created liberty interests in a speedy trial under Ohio statutory provisions were denied and when those rights were denied without a requested hearing after filing a prima facie motion for discharge.
**Supporting Facts:** Pursuant to Ohio law, petitioner had a liberty interest to be tried within 90 days after being placed in jail on a pending felony charge. That liberty interest was denied without due process of law in violation of the U.S. Constitution. Due process was not followed when the court summarily and arbitrarily denied his motion for discharge without first conducting a hearing. (2) A demand for speedy trial is necessary to trigger the time requirements under R.C. 2945.02 and 2941.401. On August 26, 2002, at his bond hearing, petitioner made a demand for a speedy trial under Ohio Statutory provisions, putting both the court and the State on notice that he was requesting a speedy and final disposition of his case. That demand was received and acknowledged by both the prosecutor's office and the court. However, petitioner sat in jail for 19 months after that demand was made. On March 8, 2004, petitioner filed a motion to dismiss because he had not been brought to trial in a timely manner. Without conducting a hearing, the trial court arbitrarily denied his motion in violation of his due process rights protected under the U.S. Constitution.

**GROUND SIX:** Petitioner was denied a speedy trial under the Ohio constitutional provision. The denial of that right without a prior requested hearing also violated his due process rights under U.S. Constitutional provisions.
**Supporting Facts:** Article I, Section 10 of the Ohio Constitution provides that an accused shall have a speedy public trial "(i)n any trial, in any court." After the granting of a new trial on August 21, 2002, petitioner waited 554 days in jail, in lieu of bail on a pending felony charged before his trial commenced on March 9,

2004. As a result, petitioner's right to an Ohio Constitutional speedy trial was violated. His due process rights under the U.S. Constitution were also violated when this state created law was arbitrarily denied without the hearing petitioner requested on March 9, 2004.

**GROUND SEVEN:** Petitioner's rights under due process were violated when the trial court, without jurisdiction, ruled on petitioner's Civ.R. 60(B), Motion for relief from judgment' recast his 60(B) as a petition for post-conviction relief (PCR) and; failed to strike the State's untimely responses.
**Supporting Facts:** In order to comply with the one year time requirement for the filing of a Civ.R. 60(B), petitioner filed a motion for relief from judgment on March 15, 2005, unambiguously invoking Civ. R. 60(B). Since his direct appeal was pending, petitioner requested the trial court to hold his 60(B) in abeyance until it acquired jurisdiction. Pursuant to the rules of Civil Procedure, petitioner also filed motions to strike the State's untimely responses and for default judgment. Ignoring petitioner's requests and, without any jurisdiction, and relying on the State's untimely responses, the court recast petitioner's 60(B) as a PCR and then denied relief, ruling that as a PCR his motion was untimely. The court's actions violated petitioner's right of due process protected under the Fifth and Fourteenth Amendments to the United States Constitution.

**GROUND EIGHT:** Petitioner was denied his due process right to a fair trial under the United States Constitution and his right to present a complete defense when, pursuant to an order by the trial court for a DNA test, there was no DNA test conducted.
**Supporting Facts:** In October, 2003, the trial court ordered a DNA test on samples of hair that were found with the victim's remains. These samples were sent to the FBI laboratory for DNA analysis along with known samples. However, there was NEVER a completed test performed. With the hope of finally having the hair tested, petitioner, on October 26, 2004, filed an application for DNA testing pursuant to Ohio's "Post-conviction DNA Testing for Eligible Inmates," codified at R.C. 2953.72 to 2953.83. The trial court denied that request, further preventing petitioner form obtaining evidence to support his case. The failed attempt to conduct the original test and the denial in 2004 to have the test performed as originally ordered by the court, violated petitioner's right to due process under the United States Constitution.

(Doc. 1.)

On October 3, 2007, Schlee filed a Motion to Supplement and/or Amend 28

U.S.C. 2254 Habeas Petition Pursuant to 28 U.S.C. § 2242. (Doc. 15.) In this motion,

Schlee sought leave of court to expand Ground Seven to include a double jeopardy

claim and submit exhibits for the record.  The Court granted this motion on February 22,

2008.  (Doc. 42.)   Schlee expanded Ground Seven by way of a Traverse to include his

double jeopardy claim on April 2, 2008.  (Doc. 52.)  Schlee also moved to supplement

the record with documents pertaining to his 1993 trial.  (Doc. 47.)  The Court granted

this request on December 31, 2008 (Doc. 74), and Respondent filed copies of these

documents with the Court on January 30, 2009 (Doc. 75)**.**

### III.  PROCEDURAL REVIEW

**A.**     **Jurisdiction**

Writs of habeas corpus may be granted by a district court within its respective

geographic jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody
> under the judgment and sentence of a State court of a State which contains two
> or more Federal judicial districts, the application may be filed in the district court
> for the district within which the State court was held which convicted and
> sentenced him and each of such district courts shall have concurrent jurisdiction
> to entertain the application.

28 U.S.C. § 2241(a) and (d).  Schlee was convicted in the Court of Common Pleas in

Lake County, Ohio, and filed his writ of habeas corpus in the Northern District of Ohio.

Lake County is within the Northern District of Ohio.  Thus, this court has jurisdiction

over Schlee's petition.

District courts are also limited in their subject matter jurisdiction.  Title 28 U.S.C.

§ 2254(a) provides in relevant part that "a district court shall entertain an application for

a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a

State court only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States."  The writ is available "when the petitioner is in

-12-

custody . . . and the detention is related to a claimed constitutional violation."  *Kirby v. Dutton*, 794 F.2d 245, 256 (6th Cir. 1986).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . . ."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Respondent asserts that Grounds Three, Five, Six, Seven, and Eight are not cognizable for the purposes of habeas review.  Such an assertion is a challenge to the court's subject matter jurisdiction over a claim.  The court shall examine each of these claims separately.

*1.  Ground Three*

Ground Three alleges that "[t]he trial court prevented petitioner from presenting a complete defense when it denied his request for a new trial in violation of the confrontation clause, due process and a fair trial as applied to the U.S. Constitution."

A writ of habeas corpus "is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration."  *Kirby*, 794 F.2d at 247; *see also Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.").  Although the aim of a challenge to the conduct of post-conviction proceedings is release, that is not enough to bring constitutional errors alleged to have been committed in such collateral proceedings within the orbit of the writ:  "[T]he petition must directly dispute the fact or duration of the confinement.  Though the *ultimate* goal . . . is release from confinement, . . . [w]e decline to allow the scope of the writ to reach [the]

-13-

second tier of complaints about deficiencies in state post-conviction proceedings." *Kirby*, 794 F.2d at 248.

A motion for a new trial based on new evidence is a post-conviction proceeding. *Pudelski v. Wilson*, 2007 WL 1592099 (N.D. Ohio 2007).  As such, it is not cognizable on habeas review.  Because such a claim is beyond this court's subject matter jurisdiction, the court should dismiss Schlee's third ground for relief.

Schlee asserts that Ground Three is cognizable upon habeas review because it encompasses a claim for "actual innocence."  However, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993);[1] *see also Cress v. Palmer*, 484 F.3d 844 (6th Cir. 2007).  Moreover, even if a claim of "actual innocence" were cognizable on habeas review, Schlee's claim fails on the merits for the reasons stated *infra*, pp. 27-30.  Schlee's claim of actual innocence does not provide a basis for habeas relief.

*2.  Grounds Five and Six*

Grounds Five and Six assert that Schlee was denied a speedy trial pursuant to

---

[1]  The *Herrera* Court did carve out a potential exception to this rule, holding that federal habeas relief may be warranted for a "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim."  *Id.* at 417.  This exception does not apply to the instant action as it is not a death penalty case.

Ohio statutory provisions (Ground Five) and the Ohio Constitution (Ground Six).[2] Respondent asserts that these claims are not cognizable in this habeas corpus proceeding.

Neither a violation of state law nor a state court's decision applying purely state law is subject to habeas corpus review in federal court. *Bey v. Bagley*, 500 F.3d 514, 518-19 (6th Cir. 2007). "It is not the province of a federal habeas court to reexamine state-court determination on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Only when the alleged violation of state law violates due process by rendering a trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

A violation of a state speedy trial statute does not present a constitutional claim. *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998); *Hutchison v. Marshall*, 744 F.2d 44, 45-47 (6th Cir. 1984). To the extent that Schlee asserts a violation of the Ohio Speedy Trial Act and the Ohio Constitution, his claim raises issues of state law not cognizable in federal habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The court should dismiss Grounds Five and Six, therefore, as beyond the court's subject matter jurisdiction.

*3. Ground Seven*

Ground Seven alleges in part that the trial court violated Schlee's due process

---

[2]    To the extent that Grounds Five and Six may be read as alleging a violation of the federal right to speedy trial, this issue is addressed in the examination of the merits of Ground Four, alleging a violation of the federal right to a speedy trial.

-15-

rights when it recast Schlee's Motion for Relief from Judgment pursuant to Ohio Rule of Civil Procedure Rule 60(B) Motion as a petition for post-conviction relief and when the trial court failed to strike the prosecutor's untimely responses.  Respondent asserts that this claim lies beyond the scope of federal habeas review.

Regardless of how Schlee's motion is cast,  as a motion for relief from judgment pursuant to Ohio Rule 60(B) or as a petition for post-conviction relief, it is a motion for post-conviction review.  As previously noted, claims of constitutional deprivations occurring during state post-conviction proceedings are not cognizable under § 2254 because such claims address collateral matters and not the underlying state conviction giving rise to custody.  *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1986).  Thus, the court should dismiss that portion of Ground Seven alleging that the trial court violated Schlee's due process rights by recasting his motion for relief from judgment.  That claim is beyond the court's subject matter jurisdiction.

### 4. Ground Eight

In Ground Eight, Schlee asserts that he was denied his due process right to a fair trial when no DNA test was conducted prior to trial and when the trial court denied his application for post-conviction DNA testing pursuant to Ohio Revised Code § 2953.72-.82.

The claim that the trial court's failure to test DNA prior to trial denied Schlee due process is either beyond this court's jurisdiction or without merit.  Prior to trial, the court granted a continuance to Schlee and Respondent so that an FBI laboratory could perform a DNA test on hairs found in the victim's watchband.  Schlee and Respondent both indicated in the joint motion for continuance to allow a DNA test that "no further

-16-

requests for subsequent DNA analysis on these hairs will be made, regardless of the results obtained by the FBI testing."  Thereafter, the FBI laboratory found that the DNA sample was insufficient for DNA testing purposes.

Although cloaked in the garb of a due process violation, Schlee asserts only a violation of state law.   The state court's refusal to order the testing of DNA evidence is not a basis for habeas relief because it was based entirely on state law.  "[A] state court's interpretation of state law. . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74 (2005) ; *see also Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (stating that "this Court 'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition").

To the extent that Schlee asserts a due process violation by claiming that his trial was fundamentally unfair due to the failure to test DNA evidence *before* his trial, this argument also fails.  First, Schlee has no constitutional right to have DNA testing performed.  *See e.g., United States v. Johnson*, 2007 WL 1651302 (D. Kan. 2007); *Luckett v. Berghuis*, 2006 WL 1779383, *8 (E.D. Mich. 2006); *Garner v. Harry*, 2006 WI 3371128, *10 (E.D. Mich. 2006); *Johnson v. Rollins*, 2006 WI 2546807 (E.D. Mo. 2006); *Venticinque v. Burge*, 2005 WL 3369093, *5 (E.D.N.Y. 2005); *Guidry v. Cain*, 2005 WL 1330133, *6 (W.D. La. 2005); *Jimenez v. New Jersey*, 245 F.Supp.2d 584, 587-88 (D.N.J. 2003); *Harrison v. Abraham*, 1996 WL 752285, *4 (E.D. Pa. 1996).  Second, even if such a right existed, Schlee was not denied this right.  A hair sample was sent to the FBI laboratory for testing.  Testing was not performed only because the hair sample was insufficient.  Schlee makes no argument that the hair sample was, in fact, sufficient for testing at the time.  This does not remotely support a claim that Schlee's trial was

fundamentally unfair.  Rather, it is an attempt to disguise a state-law issue as a federal claim.

Finally, Schlee's claim that he was denied due process when the trial court denied his application for DNA testing *after* his trial is beyond this court's jurisdiction. The application was a post-conviction proceeding, and Schlee is not in custody pursuant to the order denying this request.  Consequently, the court should dismiss this claim as beyond the court's subject matter jurisdiction.

To the extent that Ground Eight states claims based on state law and state post-conviction proceedings, it is beyond this court's subject matter jurisdiction.  To the extent that it states a federal claim, it is without merit.  In either case, the court should dismiss Ground Eight.

**B.    Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

-18-

Respondent argues that Schlee's claim in Ground Seven that his conviction violated his constitutional protection against double jeopardy is time barred.  Schlee's conviction became final on February 22, 2006 when the Supreme Court of Ohio dismissed his appeal.[3]  Schlee filed his initial petition on February 21, 2007.  On October 3, 2007, Schlee filed a motion to supplement or amend his habeas petition to include a claim of double jeopardy.  Thus, Schlee's claim of double jeopardy was filed outside the one-year statutory period for filing a habeas claim.

Schlee responds with three arguments:  (1) the claim of double jeopardy relates back to the claims set forth in the original petition under *Mayle v. Felix*, 545 U.S. 644 (2005), and is timely because the original petition is timely; (2) the running of the statutory period was tolled during the pendency of his motion for relief from judgment; and (3) the running of the statutory period was tolled during the pendency of his application for DNA testing.

*1.  Relation back to the original petition*

When a petitioner asserts a new, otherwise-untimely claim "tied to a common core of operative facts" as a timely filed claim, the new claim may be considered timely filed if it "relates back" to the previously filed claim.  *Mayle*, 545 U.S. at 664, n.7.  In *Mayle*, however, the Court found that a new claim that the admission of recorded statements violated the petitioner's right of confrontation did not relate back to an earlier claim that admission of allegedly coerced statements denied petitioner a fair trial.  The

---

[3]  The statute of limitations at 28 U.S.C. § 2244(d)(1) is not tolled during the period within which a petitioner may apply for a writ of certiorari to the United States Supreme Court.  *Lawrence v. Florida*, ___ U.S. ___, 127 S. Ct. 1079 (2007).

-19-

Court held that a new claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

In the instant action, Schlee asserts a double jeopardy claim in his supplemental petition. This claim is unrelated to any of the claims presented in his original petition, as no other claim in the petition is supported by facts similar in time and type to the claim of double jeopardy.

Schlee did argue in his state motion for relief from judgment that his retrial and conviction subjected him to double jeopardy. However, Schlee's habeas corpus claim challenging the state trial court's rejection of his motion for relief from judgment is a due process claim grounded in procedural facts and law.[4]  The double jeopardy claim in the supplemental petition asserts that Schlee's retrial violated the double jeopardy clause because "the prosecutorial misconduct surrounding both his first and second trial represented a sequence or pattern of repeated wrongdoing that rose to a level of fraud inter partes and fraud on the court." (Doc. 15 at 4.) As the original due process claim and the double jeopardy claim are supported by very different sets of facts, the double jeopardy claim does not relate back to that due process claim or to any other claim in the original petition. Thus, Schlee's argument that the supplemental double jeopardy claim relates back to the original petition is without merit. Accordingly, Schlee did not

---

[4]  Ground seven of Schlee's habeas petition argues that the trial court violated his due process rights because the court had no jurisdiction when it recast his motion pursuant to Ohio Civ. R. 60(B) as a petition for post-conviction relief and ruled on the recast motion without striking the State's untimely responses. The gravamen of the claim is an alleged series of procedural violations. The content of Schlee's original Ohio Civ. R. 60(B) is not relevant to the claim.

timely file the supplemental double jeopardy claim.

*2.  Whether the motion for relief from judgment tolled the statutory period*

Schlee contends that his state motion for relief from judgment tolled the running of the statutory period for filing a habeas petition.  The limitation period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  An application for state post-conviction review is "properly filed" pursuant to § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example . . . time limits upon its delivery." *Keenan v. Bagley*, 400 F.3d 4178, 420 (6th Cir. 2005).

The trial court found and the state appellate court affirmed that Schlee's motion for relief from judgment was untimely filed.  Because the motion was not "properly filed" within the meaning of the habeas statute and *Keenan*, it did not toll the running of the statutory period.

*3.  Whether the application for DNA testing tolled the statutory period*

Schlee also argues that his application for DNA testing tolled the running of the statutory period for filing a habeas petition.  Respondent replies that Schlee's application for DNA testing is immaterial because it does not constitute a "properly filed application for . . . other collateral review" under § 2244(d)(2), but rather is merely a statutory request to have DNA evidence tested.  Neither the Sixth Circuit nor the Supreme Court has spoken on the issue of whether an application for DNA testing tolls AEDPA's statute of limitations.  Two circuit courts have addressed the issue and arrived at different but reconcilable conclusions.

-21-

In *Hutson v. Quarterman*, 508 F.3d 236 (5th Cir. 2007), the Fifth Circuit held that a post-conviction application for DNA testing made pursuant to Texas law constitutes "other collateral review" under AEDPA and tolls the limitations period.   The Fifth Circuit noted that "the motion for post-conviction DNA proceedings is seeking to challenge that judgment by potentially requiring that the trial court hold a hearing to determine whether it was reasonably probable that the convicted person would have be acquitted given the DNA results.  In short . . . [the petitioner's] motion for DNA testing is a request for review of the judgment pursuant to which he is incarcerated."  *Id.*

In *Brown v. Secretary for the Department of Corrections*, 530 F.3d 1335 (11th Cir. 2008), the Eleventh Circuit distinguished a Florida law providing for DNA testing from the law at issue in *Hutson*.   Florida law allows a convicted person to seek DNA testing, but culminates only in "the results of the DNA testing ordered by the court [being] provided in writing to the court, the movant, and the prosecuting authority."  *Id.* at 1337 (quoting Florida R. of Crim. Pro. 3.853).  In contrast, Texas law culminates in an evidentiary hearing regarding the legitimacy of the conviction.  *Id.*  The Eleventh Circuit equated the application for DNA testing under Florida law with a motion for discovery, as it does not collaterally attack the criminal judgment.  Thus, the application for DNA testing under Florida does not constitute an "application for collateral review with respect to the pertinent judgment" under AEDPA and does not toll the statute of limitations.  *Id.*

The Ohio statute providing for post-conviction testing of DNA evidence, O.R.C. §§ 2953.71 - 82, is similar to the Florida law at issue in *Brown.*  Section 2953.81 provides that the results of DNA testing are to be preserved, that the parties and court

-22-

are to receive a copy of the DNA results, and that results may be entered into any proceeding.  However, the statute provides no independent basis for which a convicted person can seek review of his conviction.  Rather, it merely provides the means to produce evidence to the parties and the courts.  As such, Schlee's application for DNA testing is not an application for collateral review under AEDPA and does not toll the statute of limitations.

Therefore, Schlee's Supplemental Ground Seven is untimely and should be dismissed.  However, because this issue has not yet been addressed by the Sixth Circuit or the Supreme Court, this Report and Recommendation will review Supplemental Ground Seven on the merits.[5]

## C.    Evidentiary Hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  To secure an evidentiary hearing, a habeas petitioner first must demonstrate that 28 U.S.C. § 2254(e)(2) permits such a hearing.  That statute states:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court **shall not** hold a hearing on the claim unless the applicant shows that–
>
>> (A) the claim relies on–

---

[5]  Respondent also argues that Ground Seven is procedurally defaulted.  However, Respondent provides limited legal analysis on this issue.  Because the alleged procedural default involves a unique and previously unsettled matter of Ohio law, the Court declines to recommend dismissal of Ground Seven on the basis of procedural default and instead reviews the claim on its merits.

-23-

> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(emphasis supplied).  "If a habeas petitioner has 'failed to develop the factual basis of a claim in State court proceedings,' he can only get an evidentiary hearing in federal district court on that claim in extremely narrow circumstances."  *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir. 2002).

Schlee has not made the required showing.  Schlee asserts broadly that he "is entitled to an evidentiary hearing in this Court before the Court can make any credibility determination on any of the facts alleged in the petition and supporting exhibits." (Traverse at 350.)  However, he fails to indicate what facts he seeks to develop or why such factual development is necessary for adjudication of these claims.  Without this information, this Court has no basis on which to grant Schlee's request for evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).  Therefore, the court should deny Schlee's request for an evidentiary hearing.

**D.    Procedural Default**

Respondent contends that Schlee has procedurally defaulted Ground One, that allegedly erroneous jury instructions violated Schlee's right to due process.  Schlee responds that (1) his claim is not procedurally defaulted because the court of appeals did not explicitly determine that his jury instruction claims were procedurally defaulted;

-24-

(2) the court of appeals did not employ plain error review as an "alternative basis" for its decision, rather it was the only basis; (3) the court of appeals should not have applied the plain error standard because Schlee asserted a claim of ineffective assistance of counsel; (4) counsel's failure to object to the jury instructions constituted ineffective assistance of counsel and serves as cause for the default; and (5) this court's failure to review the jury instruction claims will result in a fundamental miscarriage of justice.

When state courts refuse to review the merits of an alleged error because of a cited procedural violation, the petitioner has procedurally defaulted that claim. Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state ground exists for upholding the conviction or sentence. *Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit's decision in *Maupin* sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule.

> First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin*, 785 F.2d at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id*. Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim." This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id*. And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497,53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*.; *see also Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir.), *cert. denied*, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

The procedural default may be excused if the petitioner shows cause for the procedural

-25-

default and prejudice resulting from the alleged error.  *Maupin*, 785 F.2d at 138.  In

addition, a court may notice an otherwise defaulted claim if a petitioner demonstrates

"actual innocence."  This requires the petitioner must use  "new and reliable evidence

that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 299 (1995),  to make a

clear and convincing case that, but for a constitutional error, no reasonable juror would

have found petitioner guilty of the crime.  *Sawyer v. Whitley*, 505 U.S. 333, 339-40

(1992).

        Schlee failed to object contemporaneously to the jury instructions given at his re-

trial.  Schlee first made this claim to the state appellate court on the direct appeal of his

re-trial.  As Respondent notes, although the state appellate court reviewed this claim, it

did so pursuant to plain error review.  The state appellate court wrote as follows:

> {¶27} In the first assignment of error, appellant contends that the trial court erred
> by giving the jury improper and misleading instructions.  We note that since there
> were no objections made to the jury instructions at the trial court level, we must
> analyze this assignment of error under a plain error analysis pursuant to Crim.R.
> 52(B).
>
> {¶28} It is well established that "the failure to object to a jury instruction
> constitutes a waiver of any claim of error relative thereto, unless, but for the
> error, the outcome of the trial clearly would have been otherwise."  (Emphasis
> added.)  *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 Ohio B. 360, 444 N.E.2d
> 1332, syllabus, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804;
> Crim.R. 52(B). Furthermore, "'notice of plain error under Crim.R. 52(B) is to be
> taken with the utmost caution, under exceptional circumstances and only to
> prevent a manifest miscarriage of justice.'"  *State v. Gordon* (Mar. 22, 1996),
> 11th Dist. No. 92-A-1696, 1996 Ohio App. LEXIS 1078, at 3-4, quoting *Long*,
> supra, paragraph three of the syllabus.

*Schlee*, 2005 WL 2372763 at *3.  On plain error review, the state appellate court found

that the jury instructions were proper in part and, to the extent that they were erroneous,

the instructions did not affect the outcome of the trial.

-26-

The Ohio contemporaneous objection rule procedurally bars review of an alleged error when counsel fails to object to a perceived error at the time that it is made. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000) (citing Ohio R. Crim. P. 52; *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977)).  However, Ohio courts may perform plain error review in spite of counsel's failure to object contemporaneously to the perceived error.  Ohio R. Crim. P. 52.

The Sixth Circuit has consistently held that "'Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Mason v. Mitchell*, 320 F.3d 605, 635 (6th Cir. 2003) (quoting *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)).  Moreover, "plain error review does not constitute waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Finally, the Sixth Circuit has also held that it views "a state appellate court's review for plain error as the enforcement of a procedural default." *Hinkle*, 271 at 244.  In sum, the contemporaneous objection rule is applicable to Schlee's claim; the procedural bar was enforced by the state appellate court; and the rule is an adequate and independent ground on which Ohio can foreclose review of a federal constitutional claim. Thus, Schlee has defaulted his first ground for relief unless he can demonstrate cause for his default and prejudice resulting from that cause.

Schlee asserts that ineffective assistance of trial counsel caused his procedural default.  Schlee raises this claim as an independent ground for relief in Ground Two of his petition.  To qualify as cause for a procedural default, counsel's ineffectiveness must rise to the level of an independent constitutional violation under the standard

established in *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984).  For the reasons stated *infra*, Section IIIA  at 33, Schlee fails to demonstrate ineffective assistance of counsel according to the *Strickland* standard.  Schlee fails, therefore, to demonstrate cause for his procedural default.

Schlee also asserts that the procedural default must be excused pursuant to the exception for a miscarriage of justice or "actual innocence."  As already noted, this exception requires petitioner to use new and reliable evidence not presented at trial to make a clear and convincing case that, but for a constitutional error, no reasonable juror would have found petitioner guilty of the crime.  *Schlup*, 513 U.S. at 299; *Sawyer*, 505 U.S. at 339-40 (1992).  Such a showing allows the court to conclude that a fundamental miscarriage of justice has probably resulted in the conviction of one who is actually innocent and to consider the defaulted claim.  *See House v. Bell,* 547 U.S. 518 (2006);  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).doubt."  *Schlup*, 513 at 299.  "[A]ctual innocence . . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."  *Id.*

In the instant action, Schlee presents two affidavits as "new evidence" demonstrating his innocence.  The first of these is the affidavit of John Turchik who testified in the 2004 trial.  At trial, Turchik stated that on February 4, 1980, Woodsby told him about the murder after returning to work from a weekend and that he understood that the murder had occurred that weekend.  Thus, his trial testimony was consistent with Woodsby's testimony that the murder occurred on February 2, 1980 and was consistent with the fact that no one saw the decedent alive after February 2, 1980.

-28-

In his affidavit, which is dated about six months after the trial, Turchik asserts that he was unsure of the date of the conversation with Woodsby prior to trial.  However, the prosecutor showed Turchik that Woodsby had come late to work on February 4, 1980, which jogged Turchik's memory regarding the date.  In his affidavit, Turchik also states that after he testified at trial, he spoke with a former co-worker, which further jogged his memory and led him to realize that conversation actually took place on February 18 or 19, 1980.  Schlee asserts that based on this affidavit, it is clear that the murder of the decedent could not have taken place on February 2nd, as set forth in the State's theory of the case.

Schlee also sets forth the April 7, 2004 affidavit of Jeff Elersic, who did not testify at trial.  Elersic states that Woodsby asked him if he knew anyone who would kill the decedent and that he believes this conversation occurred in the middle of February 1980.  In addition, the affidavit of Charles Grieshammer, trial counsel for Schlee, states that Grieshammer spoke with Elersic during Schlee's 2004 trial about Elersic's conversation with Woodsby and, at that time, Elersic was not sure of when the conversation took place.

The affidavits of Turchik and Elersic are insufficient to establish the factual innocence of Schlee.  The statements made by Turchik and Elersic do not constitute "reliable" evidence as contemplated by *Schlup*.  Although "reliable" is not defined in *Schlup*, the Supreme Court did provide examples of reliable evidence:  "exculpatory scientific evidence," "trustworthy eyewitness accounts," and "critical physical evidence." *Id.* at 324.  The affidavits of Turchik and Elersic simply do not rise to this level of proof, as they, at most, raise questions about the accuracy and consistency of the witnesses'

-29-

trial testimony.

In Turchik's case, he had previously testified under oath that his conversation with Woodsby had taken place on February 4, 1980.  He then changed his mind after discussing the matter with a co-worker, which intimates that Turchik's memory of the event is shaky at best.  His affidavit testimony that the conversation took place on February 18 or 19 is not any more reliable than his sworn testimony in open court that the conversation took place on February 4, 1980.   The Sixth Circuit has noted that recantation testimony is of "little value" in establishing actual innocence.  *Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2005); *see also Byrd v. Collins,* 209 F.3d 486, 508 n.16 (6th Cir. 2000) ("'Recanting affidavits and witnesses are viewed with extreme suspicion by the courts.'") (quoting *Spence v. Johnson*, 80 F.3d 989, 997 (5th Cir. 1996)).

Elersic's statements are similarly unreliable.  Elersic apparently could not remember when his conversation with Woodsby took place at the time of trial.  Yet, a little over a month later (and twenty-four years after the events in question), Elersic states in an affidavit that the conversation took place in the middle of February 1980.

Moreover, even if the statements of Elersic and Turchik are reliable, their testimony does not establish the factual innocence of Schlee.  At best, the statements challenge the timeline set forth by the State through the testimony of Woodsby.  Although the statements contradict Woodsby's testimony, a reasonable juror could rely on Woodsby's account of the events of February 1980 and the fact that no one saw the decedent alive after February 2, 1980.  Thus, this Court cannot conclude that it is more likely than not that no reasonable juror would have convicted Schlee in light of this new

-30-

evidence.

Schlee also attempts to set forth a *Brady* claim in his assertion of actual innocence.  However, such a claim argues that the legal process by which Schlee was convicted was flawed, not that the facts were insufficient to support his conviction.  The waiver of a procedural default for a miscarriage of justice "is concerned with actual as compared to legal innocence. . . ." *Sawyer v. Whitley*, 505 U.S. 33, 339 (1992).  Thus, Schlee's assertion that his rights were violated under *Brady* is insufficient to demonstrate actual innocence that would excuse procedural default.

Schlee procedurally defaulted his claim that the jury instructions violated his right to due process and has not shown cause for the default nor actual innocence.   The court should, therefore, dismiss Ground One as procedurally defaulted.

### III.  REVIEW ON THE MERITS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or is based on an unreasonable determination of the facts in light of the evidence.  *Carey v.*

-31-

*Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).

Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the

law must be clearly established at the time of the petitioner's conviction.  *Carey*, 549

U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "contrary to . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "involved an unreasonable application of . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05.  A decision is "contrary to" clearly established federal law

if it reaches a conclusion opposite to that reached by Supreme Court holdings on a

question of law or if it faces a set of facts materially indistinguishable from relevant

Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A

state-court decision will certainly be contrary to our clearly established precedent if the

state court applies a rule that contradicts the governing law set forth in our cases."  *Id.*

at 405.  A decision involves an unreasonable application of federal law only if the

deciding court correctly identifies the legal principle at issue and unreasonably applies it

to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).

If a court fails to identify the correct legal principal at issue, the "unreasonable

application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to

be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the

presumption of correctness by clear and convincing evidence."  *Id.*  The court will review Schlee's remaining claims using the deferential standard of review established by the AEDPA.

**A.      Ground Two**

Ground Two asserts that Schlee received ineffective assistance of counsel when his trial counsel failed to object to the following: (1) wording on the verdict sheet, which Schlee alleges required the jury to find him either guilty beyond a reasonable doubt or not guilty beyond a reasonable doubt; (2) jury instructions that allegedly required the jury to determine that Schlee was not guilty of aggravated murder before considering the lesser included offense of murder; and (3) jury instructions that allegedly and improperly shifted the burden of proof to Schlee to establish an alibi.  Schlee contends that these jury instructions "tainted the jury's concept of reasonable doubt to such a degree that it rendered any concept or definition of reasonable doubt deficient and/or defective. . . [and] in order to find petitioner not guilty they had to reach that verdict beyond a reasonable doubt."

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

-33-

> deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

-34-

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Demonstrating a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland,* 466 U.S. at 694.

The performance and prejudice components of the test for ineffective assistance of counsel are each mixed questions of law and fact.  The district court must conduct a *de novo* review of the state court's decisions on these matters.  *See Strickland,* 466 U.S. at 698; *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000).

Schlee argues that trial counsel's failure to object to the language of the verdict form, the jury instruction regarding a lesser included offense, and the jury instruction for

-35-

an alibi constituted constitutionally ineffective assistance of trial counsel.

      *1.     The Language of the Verdict Form*

Schlee first argues that trial counsel's performance fell below an objective standard of reasonableness for failing to object to the following language on the jury verdict form:

> We, the jury, find, beyond a reasonable doubt, the defendant, Larry M. Schlee,
>
> ............................................................................................... of Aggravated
>               *Insert in ink: "Guilty" or "Not Guilty"*

Murder.

Schlee further argues that this language prejudiced the outcome of the trial by requiring the jury to find him "not guilty beyond a reasonable doubt."  According to Schlee, this destroyed the presumption of innocence to which he was entitled.  Schlee also contends that because the language of the verdict form destroyed the presumption of innocence, the error was structural error.  Such error is presumed prejudicial and precludes any analysis to determine whether the error actually prejudiced the defendant.

Schlee is correct that trial counsel's performance fell below an objective standard of reasonableness because counsel failed to object to the language of the verdict form. The state appellate court held that the verdict form language was clearly erroneous. Schlee errs, however, in asserting that this was structural error.

Structural errors deprive defendants of basic constitutional protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.  *Neder v. United States*, 527 U.S. 1, 8-9 (1999).  In support of his

-36-

argument that the language of the verdict form constituted structural error, Schlee relies

on *Sullivan v. Louisiana*, 508 U.S. 275 (1993), for support.  In *Sullivan*, the Supreme

Court determined that the trial court's instruction regarding reasonable doubt was a

structural error requiring automatic reversal because it permitted the jury to find the

defendant guilty upon a degree of proof less than a reasonable doubt.

The instant case is distinguishable, however, from *Sullivan*.  The court properly

instructed Schlee's jury regarding reasonable doubt,[6] and the trial court made it clear

that the defendant could not be found guilty unless that finding was made beyond a

reasonable doubt:

> The defendant is presumed innocent until his guilt is established beyond a
> reasonable doubt. The defendant must be acquitted unless the State produced
> evidence which convinces you beyond a reasonable doubt of every essential
> element of the offense charged in the indictment.
>
> Reasonable doubt is present when, after you have carefully considered and
> compared all the evidence, you cannot say you are firmly convinced of the truth
> of the charge.  Reasonable doubt is a doubt based on reason and common
> sense.  Reasonable doubt is not mere possible doubt, because everything
> relating to human affairs or depending or moral evidence is open to some
> possible or imaginary doubt.  Proof beyond a reasonable doubt is proof of such a
> character that an ordinary person would be willing to rely and act upon it in the
> most important of his/her own affairs.
>
> ***
>
> The defendant is charged with aggravated murder.  Before you can find the
> defendant guilty you must find beyond a reasonable doubt that on or about the
> second day of February, 1980, and in Lake County, Ohio, the defendant
> purposely and with prior calculation and design caused the death of Frank M.
> Carroll.

---

[6]  The trial court's definition of "reasonable doubt" is identical to the instruction in
Ohio Jury Instructions 403.50, which the Sixth Circuit has found not to offend due process.
*See White v. Mitchell*, 431 F.3d 517, 533 (6th Cir. 2005).

\*\*\*

If you find that the State proved beyond a reasonable doubt that the defendant purposely and with prior calculation and design caused the death of Frank M. Carroll, then you must find the defendant guilty of aggravated murder.  If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of aggravated murder, then your verdict must be not guilty of aggravated murder.

\*\*\*

You must consider the offense charged in the indictment, namely, aggravated murder.  If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of aggravated murder, your verdict must be guilty of aggravated murder.  However, if you find that the State failed to prove beyond a reasonable doubt all the essential elements of aggravated murder then your verdict must be not guilty of that offense, and in that event you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser included offense of murder.

*Schlee*, 2005 WL 2372763 at \*3-\*5.

The verdict form given to Schlee's jury did not alter the State's burden to prove Schlee's guilt beyond a reasonable doubt.  Thus,  Schlee's argument that the verdict form resulted in structural error, requiring an automatic presumption of prejudice, is not well taken.  Because the erroneous language did not produce structural error, the court must determine if the objectively deficient performance of Schlee's trial counsel in failing to object to the instruction prejudiced Schlee.

Considering the verdict form in light of the trial court's instruction regarding reasonable doubt and when the jury should consider a lesser-included offense, it is clear that Schlee was not prejudiced by the faulty jury verdict form.  The jury instructions, as discussed in the section below, correctly state the law  regarding when the jury should consider a lesser-included offense.  (Jury Instructions at 6.)   This instruction made it clear that the jury did not either have to unanimously find Schlee

-38-

guilty or unanimously find him not guilty.  The instruction told the jury that if they were not unanimous on the charge of aggravated murder, the jury should then consider whether Schlee were guilty of the lesser included offense of murder.  Consequently, Schlee was not harmed by the faulty verdict form asking for unanimity as to whether Schlee was guilty or not guilty of aggravated murder.

There is no reasonable probability that absent the erroneous verdict form the jury would have had a reasonable doubt respecting Schlee's guilt, nor does the error undermine confidence in the outcome of Schlee's trial.  Schlee fails to demonstrate, therefore, that he was prejudiced by trial counsel's deficient performance.  Because Schlee was not prejudiced by trial counsel's performance, Schlee did not have constitutionally ineffective assistance of trial counsel.

2.  *The Instruction Regarding a Lesser Included Offense*

Schlee also contends that the language of the jury instruction regarding when the jury was to consider a lesser included offense conflicted with the Supreme Court of Ohio's ruling in *State v. Thomas*, 40 Ohio St. 3d 213, 533 N.E.2d 286 (1988).  That case examined both state and federal law before holding that "[t]he jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense."  *Id.* at 213, paragraph 3 of the syllabus.

In instructing the jury as to when it should consider the lesser included offense of murder, the court gave the following instruction:

> You must consider the offense charged in the indictment, namely Aggravated Murder.  If you find that the state proved beyond a reasonable doubt all the essential elements of the offense of Aggravated Murder, your verdict must be guilty of Aggravated Murder.

-39-

> However, if you find that the state failed to prove beyond a reasonable doubt all the essential elements of Aggravated Murder, then your verdict must be not guilty of that offense; and in that event, you will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all the essential elements of the lesser included offense of Murder.

> If all of you are unable to agree on a verdict of either guilty or not guilty of Aggravated Murder after thorough deliberation, then you will continue your deliberation to decide whether the state has proved beyond a reasonable doubt all the essential elements of the lesser included offense of Murder.

(Jury Instructions at 6.)

The state appellate court found, however, that the language of the instruction "was taken directly from Ohio Jury Instructions, Section 413.21, and is a correct statement of the law." *Schlee*, 2005 WL 2372763 at *5. Schlee's attorney was not objectively deficient, therefore, for failing to object to the instruction as a violation of Ohio law.

Nor does Schlee cite any case in support of a contention that the instruction violated federal law, *Thomas* notwithstanding. In *Thomas*, the trial court told the jury that it must come to unanimity regarding the defendant's guilt or innocence before it could consider the lesser included offenses of voluntary manslaughter or involuntary homicide. But the trial court's instructions to Schlee's jury do not require unanimity or an acquittal prior to turning to a verdict on the lesser offense of murder.  The instruction told the jurors that if they could not agree, they were to consider the lesser included offense. As *Thomas* is distinguishable from Schlee's case on the central fact on which *Thomas* hinged, it cannot be said that the instruction given Schlee's jury violated either Ohio law or due process in light of *Thomas*. As Schlee has not demonstrated that the contested instruction conflicted with either Ohio or federal law, Schlee's argument that

-40-

his trial attorney was constitutionally ineffective for failing to object to the instruction was without merit.

   *3.  The Alibi Instruction*

  Finally, Schlee asserts that counsel rendered ineffective assistance by failing to object to the alibi instruction.  According to Schlee, the instruction improperly shifted the burden of proving the alibi from the state to the defendant.  Respondent denies that the instruction was erroneous.

  The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358 (1970).  Thus, in instructing the jury on the defense of alibi, the court cannot shift the burden of persuasion to the defendant.  *See Leavitt v. Arave*, 383 F.3d 809 (9th Cir. 2004); *Fox v. Mann*, 71 F.3d 66 (2nd Cir. 1995); *U.S. v. Siomon*, 995 F.2d 1236 (3rd Cir. 1993).  However, "the Constitution does not require that any particular form of words be used in advising a jury of the government's burden of proof."  *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).

  In the instant case, the court gave the following instruction regarding the alibi defense:

> The defendant claims that he was at some other place at the time the offense occurred.  This is known as an alibi.  The word "alibi" means elsewhere or a different place.  If the evidence fails to establish that the defendant was elsewhere, such failure does not create an inference that the defendant was present at the time when and at place where an offense may have been committed.  If, after consideration of the evidence of alibi along with all the evidence, you are not convinced beyond a reasonable doubt that the defendant was present at the time in question, you must return a verdict of not guilty.

(Jury Instructions at 5.)

The jury instruction did not conflict with Ohio law.  The state appellate court noted that this instruction was taken directly from the Ohio Jury Instructions, Section 411.03 and is a correct instruction under Ohio law.  Trial counsel's performance was not objectively deficient, therefore, for failing to object to the instruction.

Nor did the instruction violate the United States Constitution.  Schlee asserts that the Southern District of West Virginia case, *Adkins v Bordenkircher*, 517 F.Supp. 390 (S.D.W.Va. 1981), directs this Court to hold that the alibi instruction in question unconstitutionally shifted the burden of persuasion to Schlee.   In *Adkins*, the instruction at issue was as follows:

> The Court instructs the jury that where the state has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will when [sic] the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused.

*Id.* at 394.  The federal district court held that the trial court's instruction in *Adkins* improperly shifted the burden of persuasion to the defendant.  But the instruction given to Schlee's jury did not improperly shift the burden of proof.  Rather, the instruction directed the jury to consider the all evidence, including the evidence of alibi, and determine whether reasonable doubt existed that defendant was present during the crime.  Thus, the burden of persuasion remained with the prosecution, and the instruction did not violate due process.  As the jury instruction did not violate due process, trial counsel's performance was not objectively deficient in that respect for failing to object to the instruction.

In sum, the contested jury instruction did not conflict with Ohio or federal law.

-42-

Schlee's attorney did not provide constitutionally ineffective assistance, therefore, for failing to object to the instruction.  For this reason, Schlee's claim that his trial attorney was ineffective for failing to object to the alibi instruction is without merit.

None of Schlee's arguments that his trial attorney rendered ineffective assistance of counsel has merit.  Consequently, the court should dismiss Schlee's second ground for relief in its entirety.

## B.    Ground Four

Ground Four asserts that the trial court denied Schlee his right to a speedy trial under the United States Constitution.  To determine whether a delay in bringing a defendant to trial violates the constitutional guarantee of a speedy trial, a court must consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Id.*  Courts have generally found delays that approached one year to be "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

The state appellate court reviewing Schlee's retrial on direct appeal held that the trial court did not violate Schlee's federal right to a speedy trial:

> [T]he issue in a retrial is whether the delay was constitutionally reasonable. *Fanning* at 21.  In *Barker v. Wingo* (1972), 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182, the Supreme Court of the United States set forth a four-pronged test to determine what is a reasonable delay. Under that test, a court should consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial rights; and (4) the prejudice to the defendant.

{¶83} Additionally, the court stated: "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such  an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530-531.

{¶84} In the present case, appellant was granted a new trial on August 21, 2002. Appellee filed an appeal from that decision on September 20, 2002, which was denied by this court on March 24, 2003.  The trial court scheduled the retrial for November 10, 2003, which was later continued to March 8, 2004, by consent of both parties for the purpose of conducting DNA testing.  Accordingly, the length of the delay attributable to the state totaled two hundred sixty-one days.

{¶85} This court has previously held that when a defendant is granted a new trial, the time in which the prosecution seeks appellate review of that decision is not chargeable to the state.  "It would be unreasonable to fashion a rule requiring the state to bear the expense of conducting a second prosecution where the conviction obtained after the first may be reinstated ***.  Under these circumstances, the state's interest in judicial economy outweighs the individual's interest in a speedy, public trial."  *State v. Montaz-Pagan* (Oct. 18, 1996), 11th Dist. No. 96-T-5451, 1996 Ohio App. LEXIS 4613, at 9, 1996 WL 648733.

{¶86} "Generally, delays over one year are presumptively prejudicial."  *Echols* at 91, citing *State v. Kelly* (1995), 101 Ohio App.3d 700, 705, 656 N.E.2d 419.  In this case, the length of the delay - from March 24, 2003, until November 10, 2003 - was less than one year, so the delay was not presumptively prejudicial. Therefore, the remaining *Barker* factors do not have to be addressed.  *Barker* at 530-531. However, even if those factors were taken into consideration, it is clear that the relatively short delay was not prejudicial to appellant given the fact that over twenty-four years had already passed since the crime occurred.

{¶87} Thus, the trial court did not abuse its discretion by denying his motion to dismiss on speedy trial grounds.

*Schlee*, 2005 WL 2372763 at *10-*11.

The state appellate court correctly stated the applicable federal law, and its

holding was a reasonable application of that law.  In applying federal law, the state

appellate court found that the 261 delay from the denial of the prosecution's appeal of

the reversal of Schlee's first conviction (March 24, 2003) until the date the trial court

scheduled a new trial (November 10, 2003) was neither presumptively nor actually

-44-

prejudicial.

Schlee argues that the delay was actually nineteen months, measuring the delay from the time that elapsed from the date that the trial court granted a new trial, August 21, 2002, until the actual commencement of his new trial on March 8, 2004.  However, Schlee incorrectly includes the period during which the trial was postponed due to the joint motion for continuance, November 10, 2003 until March 4, 2004.  "[I]n calculating the length of delay, only those periods of delay attributable to the government or court are relevant. . . ."  *United States v. Howard*, 218 F.3d 556 (6th Cir. 2000); *see also Barker*, 407 U.S. at 529; *United States v. White,* 443 F.3d 502 (7th Cir. 2006) (excluding the time during which the defendant "expressly participated in the delay").  Because the continuance of the trial was due, in part, to Schlee's request,[7] that period should not be included in the length of delay.

Petitioner also appears to argue that the length of delay should be calculated from the trial court's decision to grant a new trial, rather than from the denial of the prosecution's appeal.[8]  There is little precedent guiding the court on this matter.  In an

---

[7] A state court's factual findings as to the cause of pre-trial delay are entitled to the presumption of correctness in federal habeas proceedings involving a speedy trial claim, unless the petitioner can offer clear and convincing evidence to the contrary.  *See Wilson v. Mitchell*, 250 F.3d 388, 394-95 (6th Cir. 2001).  Schlee does not seem to challenge the characterization of the continuance as a joint motion of Schlee and the prosecution. Schlee does assert that the DNA testing, which was the reason for the continuance, was completed in January 2004 and that trial was postponed until March 8, 2004 because of the court's calendar.  Petitioner, however, does not cite any evidence in support of this assertion and therefore, the Court has no reason to reject the appellate court's factual findings on the matter.

[8] Schlee also suggests that the length of delay is actually eleven and a half years, including the time that passed from the initial indictment preceding his first trial until the commencement of his retrial.  However, Schlee provides no legal authority for this

unpublished decision, *Zerla v. Leonard*, 37 Fed. Appx. 130 (6th Cir. 2002), the Sixth

Circuit calculated the length of delay from the date the Ohio Supreme Court affirmed a

lower court's decision reversing a petitioner's conviction, rather than from the date the

conviction was actually reversed.  However, the Sixth Circuit did not provide any

reasoning for this calculation.  In light of *Zerla*, and given that no Supreme Court

precedent exists on this matter, the state appellate court's decision that the length of

delay is not presumptively prejudicial does not run contrary to or unreasonably apply

federal law.

Moreover, even if Schlee's calculation of a nineteen month delay were correct

and the length of delay were presumptively prejudicial, the remaining *Barker* factors

would not warrant a finding that the delay violated Schlee's right to a speedy trial.

First, the reasons for the delay appear to have been valid, neutral, or in aid of the

defense.  There is no evidence that the state was motivated by bad faith, a desire to

harass, or a tactical advantage, which would "weigh heavily" against the government.

*United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003).  Rather, the delay

appears to have evolved the prosecution's pursuit of its right to appeal the decision

granting Schlee a new trial, the trial court's schedule, and the joint motion for

continuance.  *See id.* at 553-54.

Second, although Schlee initially asserted his right to a speedy trial, he later

waived that demand.  Schlee contends that he demanded a speedy trial on August 21,

2002, when he requested reasonable bail and on August 26, 2002, when he made a

_____

argument, nor has this Court found any authority in support of it.

-46-

demand in open court.  However, Schlee later requested a continuance of the trial, thus essentially waiving his right to a speedy trial at that time.

Third, Schlee does not demonstrate that "substantial prejudice" resulted from the delay.  *See Schreane*, 331 F.3d at 557.  Three types of prejudice may occur when a defendant is denied a speedy trial: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused" and (3) "the possibility that [the accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 645.  "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Schlee asserts that he suffered from the third type of prejudice due to the death of a witness in 1999, the disappearance of evidence in the custody of the Lake County Prosecutor's office, and the faded memory of witnesses.  However, these events happened prior to the grant of a new trial in August 2002 and can be attributed to the passage of time between the commission of the murder in February 1980 and the granting of a new trial.  As noted by the appellate court, "[I]t is clear that the relatively short delay was not prejudicial to appellant given the fact that over twenty-four years had already passed since the crime occurred."  (ROW Exhibit 14 at ¶ 86.)

Application of the *Barker* factors lead to the conclusion that the delay in retrying Schlee did not violate his federal right to a speedy trial.  For this reason, Schlee's claim that the delay violated his right to a speedy trial is without merit.  This court should, therefore, dismiss Schlee's fourth ground for relief.

**D.     Supplement to Ground Seven**

-47-

In Supplemental Ground Seven, Schlee alleges that he was subjected to double jeopardy when the State retried him after the state trial court overturned his original conviction.  The state court overturned Schlee's conviction in the first trial on the basis of prosecutorial misconduct resulting from a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), when the State failed to turn over a report from the coroner.  As the state courts did not address the merits of this issue, this Court will conduct *de novo* review of this ground for relief.  *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (without a state court decision on the merits of a claim, "any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile").

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V.  In the most basic sense, the Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense."  *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 775 n. 1 (1994).  Double jeopardy also protects a defendant's "freedom from extended anxiety, and the necessity to confront the government's case only once." *Oregon v. Kennedy*, 456 U.S. 667, 676-77 (1982).

The doctrine of double jeopardy bars the retrial of a defendant when a conviction is reversed due to insufficient evidence but not when a conviction is reversed for trial error.  A reversal due to insufficient evidence results after the government has had a fair chance to prove its case and failed.  *Burks v. United States*, 437 U.S. 1, 15 (1978).  Thus, the reversal declares that the defendant is not merely innocent but that the jury

-48-

should not have been called upon to render a verdict.  *Id.* at 16.  There is a distinction

between a reversal due to insufficient evidence and a reversal due to trial error:

> [Reversal for trial error] implies nothing with respect to the guilt or innocence of
> the defendant. Rather, it is a determination that a defendant has been convicted
> through a judicial process which is defective in some fundamental respect. . . .
> When this occurs, the accused has a strong interest in obtaining a fair
> readjudication of his guilt free from error, just as society maintains a valid
> concern for insuring that the guilty are punished.

*Id.* at 15.

Double jeopardy bars retrial when the prosecution goads a defendant into

requesting a mistrial during the trial.  *Oregon v. Kennedy*, 456 U.S. 667, 675-76 (1982).

A mistrial must be distinguished from a conviction and subsequent reversal, however:

> The distinction [between] reversals and mistrials . . . [for] prosecutorial
> misconduct is based on a defendant's right to have his trial completed before a
> particular tribunal. A defendant's interest in this cohesiveness is compromised by
> retrial following a declaration of mistrial but is not affected by a reversal after the
> first trial has proceeded to a verdict.

*Id.* at 16; *see also United States v. Tateo*, 377 U.S. 463, 465 (1964) ("The principle that

[double jeopardy] does not preclude the Government's retrying a defendant whose

conviction is set aside because of an error in the proceedings leading to conviction is a

well-established part of our constitutional jurisprudence.").

Schlee claims that the prosecutor's misconduct in his first trial was motivated by

an intent to "goad" him into moving for a mistrial.  He contends, therefore, that the

appellate court's reversal of his conviction and later retrial violated the Double Jeopardy

Clause.

Most courts addressing this issue have found that *Kennedy* does not apply in

situations where no mistrial was granted. *United States v. McAleer*, 138 F.3d 852,

-49-

855-56 (10th Cir.1998) (finding no double jeopardy where the court did not declare a mistrial); *United States v. Doyle*, 121 F.3d 1078, 1085 (7th Cir.1997) (declining to extend *Kennedy* to situations in which mistrial was not granted); *United States v. Singleterry*, 683 F.2d 122, 124 (5th Cir.1982) (in the absence of a court declared mistrial, double jeopardy is not implicated); *Ohio v. Keenan*, 81 Ohio St. 3d. 133, 141-42, 689 N.E.2d 929, 940 (Ohio 1998) (holding that *Kennedy* does not apply to retrials after reversal).  As most courts have found that the exception in *Kennedy* does not apply to reversals and given the Supreme Court's distinction between reversals and mistrials, this court should follow the majority of courts and find that the prohibition against double jeopardy is not offended by a retrial following a reversal for prosecutorial misconduct, even if that misconduct was intended to goad the defendant into requesting a mistrial.  For this reason, the court should dismiss the remainder of Schlee's seventh ground for relief.

### IX.  CONCLUSION

For the foregoing reasons, the magistrate judge recommends that Schlee's petition for habeas relief be **DENIED**.


Date:  March 2, 2009                               /s/ *Nancy A. Vecchiarelli*
                                                    United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**