# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LARRY M. SCHLEE,                    )          CASE NO. 1:07CV487
                                    )
                PETITIONER,         )          JUDGE SARA LIOI
                                    )
vs.                                 )
                                    )
JESSIE WILLIAMS, Warden,            )          **MEMORANDUM OPINION**
                                    )
                RESPONDENT.         )
                                    )

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Nancy Vecchiarelli recommending that the petition for writ of habeas corpus be denied. (Doc. No. 76.) Petitioner has filed objections to the R&R. (Doc. No. 80.) Respondent filed no response to the objections. The Court has conducted its *de novo* review pursuant to Fed. R. Civ. P. 72(b)(3). For the reasons set forth below, the objections are overruled, the R&R is accepted, and this matter is dismissed.

## I. BACKGROUND

The factual and procedural background is set forth in detail in both the Respondent's Return of Writ (Doc. No. 16) and the Magistrate Judge's R&R (Doc. No. 76). The Court sets forth here only as much of that background as is necessary.

On September 28, 1992, petitioner was indicted by a grand jury on one count of aggravated murder, in violation of O.R.C. § 2903.01, for the 1980 murder of Frank Carroll. Following Schlee's not guilty plea, the case proceeded to trial and the jury returned a guilty verdict on March 31, 1993. Schlee was sentenced to life imprisonment with eligibility for parole

1

after twenty years. His conviction was affirmed on direct appeal; however, on August 21, 2002, the trial court granted Schlee's motion for new trial based on newly discovered evidence and prosecutorial misconduct.

Schlee's new trial commenced on March 8, 2004 and, on March 19, 2004, a jury found Schlee guilty of aggravated murder. He was sentenced to life imprisonment with the possibility of parole after fifteen years. He again sought a new trial on the basis of newly discovered evidence, but this request was denied.

Petitioner took the appeals to which he was entitled and also pursued collateral review, all as outlined in the Return of Writ and in the R&R.

Schlee filed his pro se petition for writ of habeas corpus on February 21, 2007. Since then, there have been numerous delays brought on by various motions and related proceedings, as reflected by the docket. On December 31, 2008, this Court issued a Memorandum Opinion and Order permitting supplementation of the record. The Court ordered that all pending matters were resolved except the habeas petition itself.

On March 2, 2009, the R&R was filed. Objections having been filed, the matter is now ripe for determination.


## II.  DISCUSSION

### A.    Standard of Review

Under Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." This *de novo* review requires the Court to apply the provisions of 28 U.S.C. § 2254(d), as amended by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA") and the cases construing the amendments.

Title 28, Section 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained these provisions as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 412-13. In other words, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *see also Machacek v. Hofbrauer*, 213 F.3d 947, 953 (6th Cir. 2000) ("even if we believe that a state court incorrectly applied federal law, we must refuse to issue the writ of habeas corpus if we find that the state court's decision was a reasonable one.").

3

**B.**      **Analysis of Petitioner's Objections to the R&R**

As a threshold matter, the Court notes that petitioner's Objections (Doc. No. 80) once again exhibit his pattern of unfocused, rambling arguments. The 155-page document addresses practically every conceivable habeas-context issue available to a petitioner and criticizes the magistrate judge for not addressing in the R&R each and every detail of his equally rambling arguments in his two-part reply/traverse. (Doc. Nos. 46, 52.) This Court has previously warned petitioner that he does himself no favors when he refuses to present cogent, to-the-point arguments. Neither this Court nor the magistrate judge has a duty to comb through pages of verbiage to ferrett out some sliver of a meritorious argument.

That having been said, this Court has read his document with great care and has organized his objections according to the format and outline of the R&R. Therefore, the objections will not necessarily be addressed in number order.

**1.**      **Procedural Matters**

**a.**      ***Jurisdiction* -- Grounds Three, Five, Six, Seven and Eight (Objections 17, 18, 19, 20, 21, 22, 23)**

The R&R concluded that Grounds Three, Five, Six, Eight and part of Seven are not cognizable on habeas review and are, therefore, outside this Court's subject matter jurisdiction.

Petitioner asserts the following three related objections regarding Ground Three:

(17)    The Magistrate is clearly erroneous in deciding that the issues involved in the motion for new trial, argued in Ground Three, are not cognizable on habeas review.

(18)    The Magistrate is clearly erroneous in recommending that this Court should dismiss Ground Three because it is beyond this Court's subject matter jurisdiction.

4

(19)     The Magistrate is clearly erroneous in deciding that Ground Three is not cognizable because the claim of actual innocence does not provide a basis for habeas relief.

Ground Three of the habeas petition asserts that "[t]he trial court prevented petitioner from presenting a complete defense when it denied his request for a new trial in violation of the confrontation clause, due process and a fair trial as applied to the U.S. Constitution." (Petition at 8.) The R&R concludes that this ground is not cognizable because a habeas proceeding "is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings [. . .]." (R&R at 13, quoting *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)).

Petitioner objects to this conclusion and properly points out that *Kirby* does not apply because his motion for new trial was filed before his direct appeal was filed and not as part of any post-conviction proceeding. *See, Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009) (holding that "when a state defendant files a motion for new trial before filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is part of the original criminal proceedings and is not a collateral proceeding"). Only after the trial court denied the motion did petitioner take his direct appeal wherein he assigned as error the fact that he had been denied his due process right to a fair trial when the court denied him a new trial based on newly discovered evidence.

Even though *Kirby* does not apply (and therefore the Court rejects the R&R's conclusion that Ground Three is not cognizable on habeas review), Ground Three still does not withstand review under the standards of AEDPA and, therefore, habeas relief is not warranted on this ground.

Petitioner's motion for a new trial was based on an argument that he had newly discovered evidence, namely,

> that a critical witness for the State, John Turchik, has told the defense that his testimony was inaccurate in a crucial aspect, that is, his recollection of the date of his conversation with the State's witness Amy Binns [Woodsby] was off by two weeks. Part of his testimony was a surprise to the defense and one which ordinary prudence could not have guarded against. This is so because the defense had conversations with this witness prior to trial but at that time his memory was not as certain as it later appeared in trial. Furthermore, to the extent that this evidence differs from the witnesses [sic] trial testimony it is newly discovered evidence and is material to the defense and could not with reasonable diligence have been discovered and produced at trial. An affidavit from Mr. Turchik is attached hereto and incorporated by reference.

(Return of Writ, Doc. No. 16-2 at 22.)

At the trial, Amy Woodsby testified that she had witnessed the murder. Turchik, who was Woodsby's boss, testified that Woodsby told him about the murder when she returned to work following a weekend in early February 1980. This was consistent with both Woodsby's trial testimony that the murder had occurred on February 2, 1980 and the fact that no one had seen the victim alive after February 2, 1980. In the Turchik Affidavit attached to the motion for new trial (Doc. No. 16-2 at 24-25), Turchik stated that, when he first met with the prosecuting attorney prior to petitioner's trial, his memory of the particular conversation with Woodsby was that it had occurred in late February or early March of 1980, but that his memory was jogged by the prosecutor's showing him an employment record indicating that Woodsby had shown up late for work on February 4, 1980. However, after his trial testimony, Turchik began to have doubts and, according to his affidavit, he believed the conversation had actually occurred on February 18 or February 19, 1980, after Woodsby came back from a two-week Florida vacation which began on February 5, 1980.

Additional affidavits were filed in support of the motion for new trial on April 14, 2004. (Doc. No. 16-2 at 26-28.) The affidavit of one Jeff Elersic stated that he had a conversation with Woodsby at his home in Florida, which he believed was around the middle of February 1980, wherein she inquired whether he would, or knew anyone who would, kill Frank Carroll. (Doc. No. 16-2 at 27.)

Schlee's trial counsel stated in his affidavit that he was surprised by Turchik's trial testimony; he further attested that he had spoken to Elersic during the trial about the conversation Elersic had with Woodsby, but that Elersic was not sure when the conversation had taken place other than that it was sometime after Schlee's house was burned down.[1] (Doc. No. 16-2 at 28.)

The trial court denied petitioner's motion for new trial after conducting a hearing. (Doc. No. 16-2 at 29; Doc. No. 22.) Schlee subsequently took his direct appeal and assigned the denial as one of the errors, arguing that he was denied his due process rights under the U.S. Constitution when he was denied a new trial in the face of new evidence suggesting that the crime charged did not occur on or about the time stated in the indictment. With respect to that issue, the appeals court concluded that the Turchik Affidavit was not newly discovered evidence because the investigator for the public defender's office and Schlee's trial counsel both were aware prior to trial, from interviews with Turchik, that there was some doubt in his mind as to when his conversation with Woodsby had taken place and, therefore, they could not have been completely surprised by his testimony, as was claimed in the motion for new trial. Similarly, it concluded that trial counsel had also been aware of Elersic's claim that Woodsby asked him to

---

[1] At the trial, Woodsby testified that Schlee's house burned down in October 1979. Both she and Schlee believed that Frank Carroll had "torched" the house. (Transcript, Vol. IV, Doc. No. 26, at 92-93.)

7

find a "hit man," but that counsel had chosen not to "pin him down as to when that conversation occurred." (Doc. No. 16-4 at 68-69.)

Under 28 U.S.C. § 2254(d), this Court can grant a writ of habeas corpus only if the state court's decision is contrary to clearly established federal law or is based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362-379-90 (2000). Upon *de novo* review, the Court concludes that petitioner cannot meet either test.

**Accordingly, Objections 17, 18 and 19 (Doc. No. 80 at 97-105) are rejected**.[2]

Petitioner asserts the following two related objections regarding Grounds Five and Six:

(20)  The Magistrate is clearly erroneous in deciding that the violation of Ohio statutory speedy trial is not cognizable on habeas review, and that it is beyond this Court's subject matter jurisdiction.

(21)  The Magistrate is clearly erroneous in deciding that the violation of the Ohio Constitutional right to a speedy trial is not cognizable on habeas review, and that it is beyond this Court's subject matter jurisdiction.

In Ground Five of his habeas petition, Schlee asserts that his "due process rights were violated when his state created liberty interests in a speedy trial under Ohio statutory provisions were denied and when those rights were denied without a requested hearing after filing a prima facie motion for discharge." In Ground Six, he asserts that he was "denied a speedy trial under the Ohio constitutional provision[ and] [t]he denial of that right without a prior

---

[2] Petitioner also attempts to make an argument under *Brady v. Maryland,* 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution"), to the effect that the State withheld the exculpatory evidence contained in Turchik's Affidavit. This, however, does not comport with the facts found by the state courts that petitioner's counsel was well aware before trial of Turchik's ambivalence regarding dates and that counsel's knowledge came directly from his own interviews of Turchik.

requested hearing also violated his due process rights under the U.S. Constitutional provisions." The R&R concludes that, because these are purely state law issues, they are not cognizable in federal habeas corpus.

In his Objections, petitioner argues that his right to due process under the federal Constitution was violated because the 2004 re-trial was conducted without the state court having subject matter jurisdiction and, further, that the Ohio Eleventh District Court of Appeals failed to address the arguments raised on appeal relating to speedy trial rights, simply declaring without providing "a reasoned opinion or rationale" (Objections at 106) that those provisions do not apply in the context of a new trial. Petitioner asserts that, although Grounds Five and Six are predicated on state law, they directly implicate the federal question of whether his Fourteenth Amendment rights were violated.

Petitioner relies primarily on *Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001) for the proposition that, "[w]here a state court has erred in interpreting or applying its own law, it is cognizable under habeas review if the state court's action deprived Petitioner [of] due process in violation of the U.S. Constitution." (Objections at 107.) Petitioner does not elucidate what error the state court purportedly made in interpreting or applying its own law, other than generally declaring that "[t]he state courts misapplied, misinterpreted and failed to follow the law(s) established by the Legislature, the Constitution and case authority." (Objections at 106.) Petitioner then incorporates by reference the arguments made in his first traverse (Doc. No. 46) at pages 245-48 wherein he itemizes all of the "mistakes" made by the state appellate court in applying Ohio's law.

Petitioner asserts in those pages of the traverse that the Ohio appellate court denied his federal due process rights by failing to address each and every one of twenty-five (25)

9

arguments he purportedly raised on direct appeal. However, a comparison of these arguments outlined at pages 245-48 of Doc. No. 46 to the arguments raised in his brief on state court appeal reveals that the arguments he claims to have made are simply aspects of a single assignment of error relating to his speedy trial rights. In his traverse, petitioner has combed through the brief written by his state appellate counsel and has parsed out 25 separate issues from the narrative argument made therein. He then declares here that he raised these 25 issues before the state appellate court but that court failed to address them. This is a perfect example of his abusive practices before this Court. He was entitled to have the state appellate court address his *assignment of error* regarding his denial of a speedy trial; he was not entitled to have every substantive word or phrase of his appellate brief discussed in detail in the appellate opinion. Nor is he entitled to have this Court address each of the 25 issues he now claims to have raised in the state court simply because he itemized them separately in his traverse and incorporated them by reference in his objections.

The Ohio appellate court applied Ohio state law in determining that the Ohio statute relied upon by petitioner in his direct appeal claiming a violation of speedy trial rights does not apply in the context of a retrial. (*See* Doc. No. 16-4 at 70, citing cases.) This conclusion based on state law is not cognizable in federal habeas review.

Petitioner takes this argument one step farther in an attempt to obtain habeas review. He asserts that the alleged "violation" of Ohio statutes and constitutional provisions relating to speedy trial resulted in a denial of his federal constitutional right to due process. There is no merit to this argument because it fails to acknowledge that the Ohio appellate court addressed this very federal constitutional issue, stating that "the issue in a retrial is whether the delay was constitutionally reasonable." (Doc. No. 16-4 at 70.) The appellate court then correctly

applied the four-pronged test to determine what is a reasonable delay as set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). (*Id.* at 70-72.) This was not a decision that was "contrary to, or resulted in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

**Accordingly, Objections 20 and 21 (Doc. No. 80 at 105-115) are rejected**.

Petitioner asserts the following objection regarding Ground Seven, as it was originally filed:

(22)  The Magistrate is clearly erroneous in deciding that the portion of Ground Seven argued in Trav.II [Doc. No. 52], involving the issue of recasting the Motion for Relief from Judgment (60(B)) to a PCR, is not cognizable on federal habeas review, and that it is beyond this Court's subject matter jurisdiction.

The R&R concluded that it did not matter how the state court motion was cast because a Rule 60(B) motion and a petition for post-conviction relief are *both* matters that are not cognizable in federal habeas review. (R&R at 16, citing *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1986)). This Court finds no error in that conclusion, notwithstanding petitioner's objection.

**Accordingly, Objection 22 (Doc. No. 80 at 116-17) is rejected.**

Petitioner asserts the following objection regarding Ground Eight:

(23)  The Magistrate is clearly erroneous in deciding that Ground Eight is not cognizable on habeas review, and is beyond this Court's subject matter jurisprudence.

In Ground Eight, petitioner asserts that he "was denied his due process right to a fair trial under the United States Constitution and his right to present a complete defense when, pursuant to an order by the trial court for a DNA test, there was no DNA test conducted."

The R&R concluded (1) that, although cloaked in due process terms, petitioner raised only a state law violation, a matter not cognizable in federal habeas review; (2) that there is no constitutional right to a DNA test and, here, the test was granted but ultimately not performed because the laboratory determined that the hair sample was insufficient for testing; and (3) to the extent DNA testing after the trial was denied, that is a matter addressed in a post-conviction proceeding and is not cognizable on federal habeas review.

Petitioner asserts that he did not argue that he has a right to a DNA test nor did he assert an error in a post-conviction proceeding. Rather, he insists that he asserted prosecutorial misconduct and a *Brady* violation, both of which resulted in due process violations "because he was denied the right to obtain and present exculpatory evidence at trial, and denied his right to present a complete defense." (Objections at 117-18.) He asserts that a DNA test was ordered but never performed because the sample provided was too small for analysis even though other larger samples existed.

The history behind the DNA request is helpful to the analysis. Prior to Schlee's second trial, the State and Schlee agreed to submit for DNA testing hairs found in the watchband of the victim, along with known samples. The hair sample, however, turned out to be too small for DNA testing. Schlee asserts that there were larger samples that could have been provided, but never were.[3] On October 26, 2004, about seven months after Schlee's conviction following his

_____

[3] In his first traverse (Doc. No. 46), petitioner supplies Exhibit 18, a black and white photograph of what appears to be a container of some sort containing the words "Hairs Pulled." This is his "proof" that there were larger samples available.

second trial, he applied again for DNA testing, pursuant to O.R.C. § 2953.74. This application was denied by the trial court on November 16, 2004. The court concluded that the application was not well-taken because "a prior inconclusive DNA test was conducted regarding the same biological evidence that the defendant seeks to have tested." (Doc. No. 16-5 at 68.) Schlee timely appealed asserting a single assignment of error that the trial court "erred and/or abused its discretion to the prejudice of defendant-appellant when it denied his application for DNA testing." (Doc. No. 16-5 at 82.) He argued that newer, more sophisticated testing might be successful on the previously insufficient sample *and* that there were other larger samples available. He never raised any due process argument in that appeal. Noting that it had never been claimed at trial that hair in the victim's watchband belonged to Schlee, the appellate court affirmed the denial of the DNA test concluding that even if a DNA test *were* to have excluded Schlee as the source of the hair, that would not have been outcome determinative because he could still have been found guilty by a reasonable jury.[4]

This Court finds no error in the R&R's conclusions regarding Ground Eight. Petitioner never raised anything but state law issues before the state appellate court and that court decided those issues based on state law. This is not a matter for federal habeas review.

**Accordingly, Objection 23 (Doc. No. 80 at 117-18) is rejected**.

---

[4] Petitioner makes an issue of this conclusion regarding whether the test would have been "outcome determinative," asserting that this was not part of the reasoning of the trial court and that the appellate court therefore had considered evidence outside the record. This argument has no merit. It is well settled that an appellate court can affirm a trial court's decision for reasons different from those relied upon by the trial court. This conclusion of "not outcome determinative" is not "evidence;" rather, it is a legal conclusion well within the purview of an appellate court.

b.  *Statute of Limitations* -- **Ground 7, as supplemented (Objection 2)**[5]

When Schlee filed his initial habeas petition on February 21, 2007, he articulated Ground Seven as set forth above in Section 1a. This ground was later expanded, with leave of court, to include a claim of double jeopardy.[6] The R&R concluded that this claim was time-barred because it was filed outside the one-year limitations period set by the habeas statute.

Petitioner now asserts the following objection regarding Ground Seven, as supplemented:

(2)  The Magistrate Judge is clearly erroneous in finding that Petitioner's claim of double jeopardy was filed outside the one-year statutory period.

The following dates are relevant for this discussion:

| | |
|---|---|
| March 19, 2004 | Conviction |
| March 26, 2004 | Sentencing |
| March 16, 2005 | Rule 60(B) Motion filed in trial court |
| February 22, 2006 | Leave for direct appeal denied by Ohio Supreme Court (OSC) |
| October 18, 2006 | Leave for appeal of denial of 60(B) motion denied by OSC |
| February 21, 2007 | Federal habeas petition timely filed |
| October 3, 2007 | Supplement to habeas petition filed (adding double jeopardy) |

---

[5] Because the R&R also addresses Ground Seven on the merits, there is additional discussion in Section 2c, *infra*, relating to Objections 34 and 35.

[6] This supplemental claim can be difficult to find in the record before this Court. On October 3, 2007, petitioner filed a motion to supplement his habeas petition. (Doc. No. 15.) This motion, which was granted on February 22, 2008, sought to add several documents to the record before this Court, including Exhibit 11, his Supplement to the Merit Brief ("SMB") filed before the Ohio Supreme Court on February 3, 2007. The Supreme Court case then pending (Case No. 2006-1608) was a conflict that had been certified by the 11th District Court of Appeals of Ohio. It addressed the following question: Whether the trial court can recast appellant's Motion for Relief from Judgment as a petition for postconviction relief when it has been unambiguously presented as a Civil Rule 60(B) motion. The SMB had been filed by Schlee's counsel, but it contained no argument or explanation. It only contained, as an attachment, Schlee's pro se Motion for Relief from Judgment pursuant to Civ. R. 60(B) which had been filed in the trial court on March 15, 2005. The issue regarding double jeopardy is contained in the Rule 60(B) motion. On February 20, 2008, the Ohio Supreme Court answered the certified question in the affirmative and affirmed the judgment of the court of appeals which had denied the requested postconviction relief. (*See* Doc. No. 43-1.) Therefore, the double jeopardy claim contained in Doc. No. 16-11 at pp. 1-21 is generously deemed to have been raised here by virtue of the addition to the record of this Court of a supplemental document containing the double jeopardy argument.

Petitioner's conviction became final on February 22, 2006, when the Supreme Court of Ohio dismissed his direct appeal. The one-year period for filing his habeas petition began to run the next day. His original petition, which did not contain the double jeopardy claim, was timely filed on February 21, 2007. The double jeopardy claim was introduced by way of supplement in a motion filed on October 3, 2007.

Petitioner argues that the time during which his Rule 60(B) motion (later construed as a postconviction proceeding) was pending, tolled the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2).  In his view, the limitations period started running on February 23, 2006 but, because of the then-pending Rule 60(B) motion, was tolled until October 18, 2006, a period of about eight months. Also in his view, even though he filed his original habeas petition on February 21, 2007, he actually had another eight months to file, rendering his supplement filed on October 3, 2007 also timely.[7]

This Court concludes that it need not undertake the analysis of whether or not the double jeopardy claim is now time-barred because, even if it is not time-barred, it is procedurally defaulted and, since no cause and prejudice has been argued or shown, this Court cannot address the issue on habeas review.

Without doubt, double jeopardy is not a new claim in this case. It was available at the time of petitioner's second trial to be argued as a defense (but was not). It was a known issue at the time of Schlee's direct appeal and arguably could have been assigned as error (but was not). When it was finally tardily raised in state court, it was through an improperly filed Civil

---

[7] Petitioner points to *Jones v. Bradshaw*, 489 F.Supp.2d 786 (N.D. Ohio) as authority for this proposition. In *Jones*, relying on *Artuz v. Bennett*, 531 U.S. 4, 11 (2000), the court concluded that even "an application for state post-conviction relief containing claims that are procedurally barred under state law is 'properly filed' within the meaning of the statute [i.e., 28 U.S.C. § 2244(d)(2)]." *Jones*, 489 F.Supp.2d at 798.

Rule 60(B) motion which the trial court (affirmed by the appellate court) chose to construe as an untimely postconviction petition.[8]

Clearly any claim of double jeopardy is procedurally defaulted and need not be considered by this court.

**Accordingly, Objection 2 (Doc. No. 80 at 32-36) is rejected**.


c.     *Evidentiary Hearing* **(Objection 1)**

Petitioner asserts the following objection:

(1)     The Magistrate is clearly erroneous by (1) generating an R&R without first conducting a hearing, (2) recommending that this Court deny Petitioner's request for a hearing, and (3) deciding that Petitioner has not made the required showing for a hearing pursuant to 28 U.S.C. § 2254(e)(2).

In the R&R at pp. 23-24, the Magistrate Judge correctly sets out the law as it relates to holding an evidentiary hearing in a habeas case and notes that, despite petitioner's broad assertion that he is "entitled" to a hearing, "he fails to indicate what facts he seeks to develop or why such factual development is necessary for adjudication of these claims." (R&R at 24.)

---

[8] Even if the state courts had decided the issue, without dismissing for untimeliness, they would undoubtedly have applied the following principle set forth in *State v. Perry*, 10 Ohio St.2d 175 (1967), Syllabus ¶ 9: "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." Ohio courts have consistently enforced this rule. *State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ismail*, 67 Ohio St.2d 16 (1981). *See also Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994) (Ohio's doctrine of res judicata in criminal cases is an adequate and independent state ground).

In objection, petitioner again broadly asserts that a hearing "will allow [him] an opportunity to fully and fairly develop the facts and present evidence supporting his claims that will entitle him to relief." (Objections at 3.)

The only fact which petitioner specifically points to in support of his claimed entitlement to a hearing is the "newly discovered evidence"[9] relating to Ground Three which, as discussed above under Objections 17-19, is not newly discovered; therefore, this "evidence" need not be "developed."[10] Petitioner also argues that this so-called "newly discovered evidence" is *Brady* material which was withheld by the prosecuting attorney, therefore entitling him to an evidentiary hearing. However, again as explained above, his counsel was in possession of this information before and during his trial and, in any event, petitioner actually did have a full and fair hearing in the state court. There is no need for further development as the facts developed in the State court are dispositive.[11] (*See* Transcript of 4/15/04 Hearing, Doc. No. 22.)

---

[9] As explained above, petitioner claims that in January 2008, he discovered for the first time that John Turchik, the State's witness who testified that he had a conversation with Amy Woodsby (an employee he supervised who testified that she was with petitioner when he killed Frank Carroll and that she helped him dispose of the body), which would have placed the death of Carroll on the weekend of February 16-17, 1980, not the weekend of February 2-3, 1980, as Turchik had testified at the trial. Petitioner also claims to have discovered for the first time that one Jeff Elersic purportedly had a conversation with Woodsby in mid-February 1980 wherein she asked Elersic whether he would, or whether he knew anyone who would, kill Frank Carroll. Aside from the fact that Turchik's recollection was not newly discovered in 2008, since his attorney knew of Turchik's ambivalence about the date before trial (and, in fact, this dispute is even noted in the direct appeal opinion, *see* Exhibit 14), petitioner does not explain why the two-week difference would even matter. He simply declares, without much explanation, that this fact would have proven his "actual innocence." As for the Elersic recollection, this, too, was not newly discovered in 2008. In fact, petitioner's trial counsel admitted in an affidavit that he had discussed with Elersic the conversation he claimed to have had with Woodsby but that Elersic could not remember when the conversation occurred. (*See* Doc. No. 15-5, ¶¶ 8-10.) Clearly, counsel made a strategic decision at the time of trial not to pursue this information.

[10] At one point in his argument, petitioner also asserts that he has witnesses who would testify to various improprieties (such as prosecutorial misconduct), but he "will not reveal their identity unless and until the necessary steps are taken to ensure their safety, even if it means this evidence will remain undisclosed." (Objections at 29.)

[11] All of the cases cited by petitioner as support for his claim of entitlement to an evidentiary hearing deal with situations where a defendant was denied a hearing in the state courts despite his diligent attempts to obtain one. Under those circumstances, a hearing in a federal habeas case *might* be appropriate. However, that is not the case herein.

Finally, petitioner argues that, in ruling on his second motion for new trial, the state court applied the wrong legal standard thus rendering the hearing on the motion inadequate to protect his constitutional rights. He asserts that the "reasonable probability" standard, not the "strong probability" standard used by the court, was the appropriate standard given the claimed *Brady* violation and his assertion of actual innocence.[12] As already noted, there was no *Brady* violation and merely asserting a defense of actual innocence is not sufficient to trigger the lower standard.

**Accordingly, Objection No. 1 (Doc. No. 80 at 3-31) is rejected.**

        *d.*      *Procedural Default* **(Objections 3, 4, 5)**

Petitioner asserts the following three related objections regarding Ground One:

(3)      The Magistrate is clearly erroneous in finding that Petitioner has procedurally defaulted the claims(s) argued in Ground One.

(4)      The Magistrate is clearly erroneous in failing to recognize that plain error review of Ground One in state court was incorrect and prejudicial to Petitioner.

(5)      The Magistrate is clearly erroneous in finding that Petitioner has not shown cause for excusing the purported procedural default.

In Ground One, petitioner asserts that his constitutional rights were violated because the trial court gave "erroneous and prejudicial instructions to the jury." In the R&R, the magistrate judge relied upon *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), and concluded that Ground One was procedurally defaulted because of Ohio's contemporaneous objection rule,

---

[12] Petitioner repeatedly insists that the trial court misunderstood the gravamen of his "newly discovered evidence." He claims that Turchik's alleged post-trial recollection about the date of his conversation with Woodsby would establish his *actual innocence*. As already noted, what petitioner never explains, and what makes no sense in light of the other evidence at the trial, is how this two-week difference, even if taken as true, would establish that he was actually innocent.

18

which the Sixth Circuit has consistently held "constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." (R&R at 27, quoting *Mason v. Mitchell*, 320 F.3d 605, 635 (6th Cir. 2003).)

Petitioner argues, first, that none of the factors set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)[13] apply and, second, that he has shown cause for any procedural default. Petitioner's argument with respect to *Maupin* is simply wrong, for the reasons correctly stated in the R&R. In addition, he cannot show cause for his procedural default because, as discussed in Section 2a below, he is unable to establish that his counsel performed ineffectively under the standard in *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984).

**Accordingly, Objections 3, 4 and 5 (Doc. No. 80 at 37-51) are rejected.**

e. ***Actual Innocence* and *Brady Violations* (Objections 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16)**

To the extent petitioner's grounds for relief are procedurally barred, although neither his traverse nor his objections are particularly clear, it appears that he is attempting to raise an assertion of actual innocence, coupled with a *Brady* violation, to excuse that procedural default. Reading his traverse and objections liberally, the gist of this argument is that, at the time

---

[13] Under *Maupin*, "[w]hen a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis." 785 F.2d at 138.

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. [. . .] Second, the court must decide whether the state courts actually enforced the state procedural sanction. [. . .] Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. [. . .] [Fourth], the petitioner must demonstrate under *[Wainwright v.] Sykes*[, 433 U.S. 72 (1977)] that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Id.*

of his trial, in violation of *Brady*, the prosecuting attorney withheld what petitioner is now characterizing as "newly discovered evidence" (i.e., the information in the Turchik and Elersic affidavits), which he claims would have established his actual innocence.

This amounts to what is referred to as "a fundamental miscarriage of justice" exception "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrara v. Collins*, 506 U.S. 390, 404 (1993).[14]

Petitioner asserts a total of eleven objections relating to this exception to federal habeas jurisdiction, as follows:[15]

(6) The Magistrate is clearly erroneous in applying the wrong standard of review regarding the actual innocence claim.

(7) The Magistrate is clearly erroneous in failing to accord the state court finding of fact a presumption of correctness that establishes that John Turchik is a credible and reliable witness, and that John Turchik's affidavit testimony is more reliable than his trial testimony regarding the date of the conversation with Amy Binns Woodsby about Carroll's death.

(8) The Magistrate is clearly erroneous in failing to acknowledge and address Turchik's December 28, 2007 affidavit, and the critical evidence it contains relevant to Petitioner's case and the defense of actual innocence.

(9) The Magistrate is clearly erroneous in finding that the testimony of Elersic and Turchik do [sic] not establish the factual innocence of Petitioner, that at best, the statements challenge the timeline set forth by the State.

(10) The Magistrate is clearly erroneous in finding that the new evidence demonstrating Petitioner's actual innocence is not reliable evidence not presented at trial.

---

[14] The exception ordinarily applies where "a petitioner otherwise subject to defenses of abusive or successive use of the writ may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence." *Herrara*, 506 U.S. at 404.

[15] Objections 6, 7, 8, 9, and 10 are all discussed separately in Doc. No. 80, whereas Objections 11 through 16 are treated in one combined argument.

(11)    The Magistrate is clearly erroneous in failing to conduct a de novo review of the *Brady* violation and the *Brady* evidence as argued in Ground Three.

(12)    The Magistrate is clearly erroneous in failing to conduct a de novo review regarding the effect the *Brady* evidence has on the claim of actual innocence and the effect the other independent constitutional violations that occurred in the underlying criminal proceedings have on the claim of actual innocence.

(13)    The Magistrate is clearly erroneous in finding that where Petitioner "attempts to set forth a *Brady* claim in assertion of actual innocence . . . argues [only] that that legal process by which [Petitioner] was convicted was flawed, not that the facts were insufficient to support his conviction." This finding also includes the clearly erroneous implication that Petitioner has demonstrated only a claim of 'legal innocence' as compared to 'actual innocence,' as implied by the Magistrate.

(14)    The Magistrate is clearly erroneous in finding that the claim of actual innocence based on newly discovered evidence does not include an independent constitutional violation in the underlying criminal proceeding.

(15)    The Magistrate is clearly erroneous in finding that the *Brady* violation is insufficient to demonstrate actual innocence that would excuse procedural default.

(16)    The Magistrate is clearly erroneous in finding that Petitioner has not shown actual innocence to excuse the procedural default.

Although petitioner has devoted many pages in his Objections to his arguments on this issue, the Court need not separately address any of these objections for the simple reason that petitioner has not met the test for application of the "fundamental miscarriage of justice" exception.

In *Herrara*, the Supreme Court noted that its "habeas jurisprudence makes clear that a claim of 'actual innocence' *is not itself a constitutional claim*, but instead a *gateway* through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." 504 U.S. at 404 (emphases added). The Court explained:

Petitioner in this case is simply not entitled to habeas relief [. . .]. For he does not seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect. The fundamental miscarriage of justice exception is available "only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence." *Kuhlmann, supra,* at 454, 106 S.Ct., at 2627 (emphasis added). We have never held that it extends to freestanding claims of actual innocence. Therefore, the exception is inapplicable here.

*Id.* at 404-05 (emphasis in original).

*Herrara* is directly on point. Although petitioner seems to ask this Court to find a *Brady* violation as the underlying constitutional claim, supplemented by his supposedly colorable showing of actual innocence, the Court declines. The record clearly shows that there was no *Brady* violation. The Court has already discussed why the Turchik and Elersic affidavits are not "newly discovered" evidence that was previously wrongfully withheld from the petitioner and need not discuss that issue further, except to simply note once again that petitioner's counsel was aware of the same information that the prosecutor had with respect to Turchik's expected testimony and Elersic's alleged conversation with Woodsby regarding hiring a "hit man," but chose, apparently for strategic reasons, not to pursue these matters.

Absent the underlying *Brady* (i.e., constitutional) violation, a freestanding claim of actual innocence is not cognizable on habeas review.

Although petitioner has devoted a significant portion of his Objections to these issues, the Court finds no merit in these eleven (11) objections and, therefore, **Objections 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 (Doc. No. 80 at 52-96) are all rejected.**

## 2.     Review of the Merits

### a.     *Ground Two* (Objections 29, 30, 31, 32, 33)

Ground Two addresses the alleged ineffectiveness of counsel relating to his failure "to request proper instructions and verdict forms." (Traverse, Doc. No. 46 at 88.)[16]

To establish ineffective assistance of counsel, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) that prejudice resulted, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Petitioner asserts the following objections regarding Ground Two:

(29)     The Magistrate is clearly erroneous in not finding that the holding of the State Court of Appeals that the "Not Guilty Beyond a Reasonable Doubt" jury verdict form was harmless error was unreasonable and entitled Petitioner to a Writ of Habeas Corpus.

---

[16] As is his habit, petitioner's objections with respect to Ground Two are long and rambling. He claims to organize his arguments around "two basic categories from which several sub-categories emerge." (Objections at 128.) First, he argues that the verdict form which was found by the state court of appeals to be improper was a structural error requiring an automatic presumption of prejudice. Second, he claims that the R&R errs in not rejecting the conclusion of the state court of appeals that counsel's failure to object to the defective jury verdict form constituted only harmless error. He argues, relying on *Fry v. Pliler*, 551 U.S. 112 (2007), that this "harmless determination" by the state court was itself unreasonable because, contrary to the state court's finding, there was "simply no 'overwhelming evidence of guilt' adduced by the State at either of petitioner's two trials of this matter." (Objections at 133.) He claims that this finding by the state court that there was overwhelming evidence such that any ineffectiveness of counsel was harmless is "objectively unreasonable" under the "substantial and injurious effect" test of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Petitioner argues that the magistrate judge "not only conflated Petitioner's claims of jury instruction error and verdict form error, but applied the wrong standard of review by failing to address whether or not the state court's finding of 'overwhelming evidence of guilt,' as the sole basis for finding Petitioner was not 'prejudiced' by trial counsel's deficient performance, and 'harmless error,' was 'unreasonable' as required by *Mitchell v. Esparza*, [540 U.S. 12 (2003)]." (Objections at 137.) He asserts that "the application of the wrong standard of review is 'paradigmatic abuse of discretion' and clearly erroneous." (*Id*.). He asks this Court to "perform a *de novo* review of the state court record to determine whether or not the 11th Dist's. [sic] finding that there was 'overwhelming evidence of guilt' was 'unreasonable,' and if so found, this Court should then apply the *Brecht v. Abrahamson* standard and grant the Writ of Habeas Corpus[.]" (*Id*.).

(30)   The Magistrate is clearly erroneous in not addressing the dispute between the parties that there is or is not "overwhelming evidence of guilt" in the case against Petitioner. That finding by the state court is not only an essential finding of fact, but determines whether or not Petitioner is entitled to relief pursuant to *Fry v. Pliler* (2007), 551 U.S. 112, citing to *Mitchell v. Esparza* (2003), 124 S.Ct. 7.

(31)   The Magistrate is clearly erroneous is misconstruing Petitioner's arguments and Grounds for relief regarding the lesser included offense instruction.

(32)   The Magistrate is clearly erroneous in failing to address either the infringement upon Petitioner's presumption of innocence by the "Not Guilty Beyond a Reasonable Doubt" jury verdict form instruction, or the failure of the trial court to instruct the jury that "prior calculation and design" was an *essential element*, in relation to the claim that trial counsel was ineffective in violation of Petitioner's right to effective assistance of counsel as asserted in Ground Two.

(33)   The Magistrate is clearly erroneous in failing to find that Petitioner was not prejudiced by trial counsel's failure to object to the alibi instruction, rendering trial counsel ineffective.

These objections go well beyond the issue of ineffectiveness of counsel, seeking instead review of various specific decisions of the state courts.[17] However, on habeas review, the question is not whether the state courts got it right; the question is whether counsel's representation was effective.

Petitioner does not actually challenge individual jury instructions. His fundamental objection is that counsel's performance was deficient (and caused prejudice) when he failed to object to the language of the verdict form, which tainted the jury instructions taken as a whole, including the "acquittal first" instruction relating to the lesser included offense and the alibi instruction.[18]  He also argues, in his original traverse, that he "was not only prejudiced by

---

[17] *See, e.g.*, petitioner's discussion regarding the state appellate court errors at Doc. No. 46, pp. 96-97.

[18] Beginning at page 112 of Doc. No. 46, petitioner also argues that the trial court failed to instruct the jury that "prior calculation and design" was an essential element of the crime of aggravated murder, although it did define the term for the jury. This claim, however, was never asserted before the state appellate court on direct review, even

24

trial counsel's failure to object, he was further prejudiced by the appellate court's flawed reasoning and its objectively unreasonable decision to apply the wrong standard for review." (Doc. No. 46 at 102.) Petitioner challenges the state appellate court's use of plain error review, in the face of a claim of ineffective assistance of counsel, as "contrary to or an unreasonable application of clearly established federal law determined by the U.S. Supreme Court." (*Id*. at 103.)

Petitioner argues: (1) that it was unreasonable for the state court to conclude there was "overwhelming evidence of guilt;" (2) that the standard of review should not have been plain error because he was also raising an ineffective assistance of counsel claim; and, (3) that, when the jury instructions (even taken as a whole) are read in light of the verdict form, the presumption of innocence was effectively eliminated because the jury was required to find him not only *guilty* beyond a reasonable doubt, but also *not guilty* beyond a reasonable doubt.[19]

---

though the first assignment of error addressed all of the claimed jury instruction errors, including the faulty verdict form. Therefore, this issue is procedurally defaulted. If petitioner could show that he was prejudiced by appellate counsel's failure to raise this issue on direct appeal, he might have been entitled to habeas review of the issue. However, he has not made that argument. Therefore, this Court will not address any alleged error regarding proper identification and definition of the essential elements of the crime of aggravated murder.

[19] Petitioner spends a great number of pages arguing that the problem with the verdict form and its "tainting" of the jury instructions was "structural error." "Structural errors" are those "which defy analysis by 'harmless-error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). *See, e.g., Gideon v. Wainwright*, 372 U.S. 335 (1963) (total deprivation of right to counsel at trial); *Turney v. Ohio*, 273 U.S. 510 (1927) (lack of impartial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (unlawful exclusion of members of defendant's race from grand jury); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (right to self-representation at trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (right to public trial). In contrast, "trial error" is an error which can be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 308. The Court in *Fulminante* cited *Chapman v. California*, 386 U.S. 18 (1967), which "adopted the general rule that a constitutional error does not automatically require reversal of a conviction[.]" 499 U.S. at 306. In fact, "most constitutional errors can be harmless." *Id*.

There is no doubt that the verdict form submitted to the jury was improperly worded, as acknowledged by the R&R and also by the state appellate court. Schlee argues that this improper wording destroyed the presumption of his innocence and was, therefore, structural error. However, as correctly decided by both the state appellate court and the magistrate judge in the R&R, this error does not "defy analysis by harmless error standards." In fact, it is completely possible to examine the entire jury instruction to determine whether the jury was properly instructed regarding the state's burden of proof of guilt beyond a reasonable doubt. When that analysis is performed, it is clear that any defect in the verdict form was harmless error.

This Court does not disagree with petitioner as far as the standard of review. In *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007), the Court held "that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, [. . .] whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705."[20]

Although *Brecht* would ordinarily be the starting point on habeas review, because there was no contemporaneous objection by petitioner's counsel, the issue is procedurally defaulted and the default can only be excused by proof of ineffective assistance of counsel. As already explained, establishing ineffective assistance requires a showing of both deficient performance (admittedly established here) and prejudice. "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) (citing *Kyles v. Whitley*, 514 U.S. 419, 436 (1995)). "If [petitioner] can show that he was prejudiced by his attorney's failure to object [to the poorly worded verdict form], then he necessarily satisfies *Brecht*; if, alternatively, [he] fails to establish that he was prejudiced, then [. . .] his default [cannot be excused] and it is immaterial whether he can otherwise satisfy *Brecht*." *Hall*, 563 F.3d at 236.

---

[20] In this case, although the state appellate court did not mention *Chapman* in the course of its review, it did conclude that "[t]here was overwhelming evidence of appellant's guilt presented at trial so, but for the flaw in the jury verdict form[,] this court can not [sic] conclude that the outcome of the trial would have been different." (Doc. No. 16-4 at 60 ¶ 42.) This is the familiar harmless error analysis of *Chapman*, which held that a conviction tainted by constitutional error must be set aside unless the error complained of "was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24.

Failure to object to a constitutionally infirm jury instruction can constitute the basis for an ineffective assistance of counsel claim, *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Gray v. Lynn*, 6 F.3d 265, 269 (5th Cir. 1993)), if, "but for defense counsel's failure to object to the erroneous jury instruction, there is a reasonable probability that the outcome [. . .] would have been different." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007).

Turning to the verdict form, it stated:



We, the jury, find, beyond a reasonable doubt, the defendant, Larry M. Schlee, .............................................................................................. of Aggravated

*Insert in ink: "Guilty" or "Not Guilty"*

Murder.

(Doc. No. 16-3 at 12.) The state appellate court concluded that the verdict form was "erroneous on its face." (Doc. No. 16-4 at 58 ¶ 32.)[21] However, the court went on to determine that,

> while the jury verdict form itself was flawed, when taken as a whole, the jury instructions were not so tainted as to rise to the level of plain error. The trial court's other instructions limited any potential prejudice. There was overwhelming evidence of appellant's guilt presented at trial so, but for the flaw in the jury verdict form[,] this court can not [sic] conclude that the outcome of the trial would have been different.

Although petitioner claims that the entire jury instruction was "tainted" by the improper wording of the verdict form, this Court cannot agree. The jurors had copies of the jury instruction in written form. Therein, the trial court's instructions were clear and included the following:

> The defendant is presumed innocent until his guilt is established beyond a reasonable doubt. The defendant must be acquitted unless the State produced evidence which convinces you beyond a reasonable doubt of every essential element of the offense charged in the indictment. Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you

---

[21] The error rested on the fact that the form required that Schlee be found both guilty and not guilty by proof beyond a reasonable doubt.

cannot say you're firmly convinced of the truth of the charge. Reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.

[***]

Now for the specific charge: Aggravated murder. The defendant is charged with aggravated murder. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 2nd day of February 1980, and in Lake County, Ohio, the defendant purposely and with prior calculation and design caused the death of Frank M. Carroll.

[***]

The defendant claims that he was at some other place at the time the offense occurred. This is known as an alibi. The word "alibi" means elsewhere or different place. If the evidence fails to establish that the defendant was elsewhere, such failure does not create an inference that the defendant was present at the time when and at the place where an offense may have been committed. If after a consideration of the evidence of alibi, along with all the evidence, you are not convinced beyond a reasonable doubt that the defendant was present at the time in question, you must return a verdict of not guilty. If you find that the State proved beyond a reasonable doubt that the defendant purposely and with prior calculation and design caused the death of Frank M. Carroll, then you must find the defendant guilty of aggravated murder. If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of aggravated murder, then your verdict must be not guilty of aggravated murder. You must consider the offense charged in the indictment, namely, aggravated murder. If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of aggravated murder, your verdict must be guilty of aggravated murder. However, if you find that the State failed to proved beyond a reasonable doubt all the essential elements of aggravated murder, then your verdict must be not guilty of that offense, and in that event you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser included offense of murder.

(Transcript, Doc. No. 4 at 4, 9-10, 11-13.)[22]

---

[22] Although this recitation of the jury instructions is taken from the trial transcript, the copy of those instructions given to the jurors in written form is also attached as Exhibit 1 to petitioner's first traverse. (Doc. No. 46.)

The State's burden of proof was more than clearly set forth in these instructions and the miswording of the verdict form did not alter that burden. *See U.S. v. Park*, 421 U.S. 658, 674 (1975) (" 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge' ") (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). Nor did the verdict form prejudice petitioner, when considered in light of the entire instruction which clearly focused the jury's attention on the State's burden of proving guilt beyond a reasonable doubt. It cannot be concluded that, had counsel properly and timely objected to the language of the verdict form, "there is a reasonable probability that the outcome [...] would have been different." *Benge*, 474 F.3d at 247. Therefore, trial counsel's objectively deficient failure to object to the language of the verdict form did not constitute ineffective assistance of counsel under the *Strickland* test.

**Accordingly, Objections 29, 30, 31, 32 and 33 (Doc. No. 80 at 128-148) are rejected.**

### *b.* ***Ground Four* (Objections 24, 25, 26, 27, 28)**

Ground Four asserts that petitioner's speedy trial and due process rights were violated when "his motion to dismiss was denied without a prior requested hearing."

The R&R concluded that this issue was properly reviewed by the State appellate court and that its ruling was not unreasonable under the applicable federal law, which was correctly enunciated by the State court.

Petitioner asserts the following five related objections regarding Ground Four:

(24) The Magistrate is clearly erroneous in deciding that this Court should dismiss Ground Four because the delay in the 2004 trial did not violate Petitioner's federal right to speedy trial, and that the claim is without merit.

29

(25)  The Magistrate is clearly erroneous in applying a presumption of correctness to the state court's findings that the pre-trial delay did not prejudice Petitioner.

(26)  The Magistrate is clearly erroneous for failing to address and apply the case authority argued in Ground Four used to support Petitioner's claim, thus effectively failing to conduct a de novo review.

(27)  The Magistrate is clearly erroneous in failing to address the due process violation of the state-court's failure to conduct a hearing regarding the motion to dismiss for violation of speedy trial as argued in the habeas petition.

(28)  The Magistrate is clearly erroneous in deciding that Petitioner waived the demand for speedy trial, thus waiving his right to speedy trial.

The R&R correctly sets forth the law as follows:

To determine whether a delay in bringing a defendant to trial violates the constitutional guarantee of a speedy trial, a court must consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right, [sic] and (4) the prejudice to the defendant.

(R&R, Doc. No. 76 at 43 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). These factors are not "talismanic qualities," but "courts must still engage in a difficult and sensitive balancing process." *Id.* at 533.

Under *Barker*, the length of delay is a triggering mechanism. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530-31. The second factor, reason for the delay, is closely related to the first (i.e., the "triggering") factor. If the state was purposely delaying the

trial, that would be weighted heavily. More neutral reasons (such as "negligence or overcrowded courts," *id*. at 531, should be weighted less heavily.

      As already noted in the fact portion of this opinion, Schlee was indicted on September 28, 1992 and found guilty of aggravated murder on March 31, 1993. The conviction was affirmed on appeal. Seven and a half years later, he moved for a new trial alleging that *Brady* material had been withheld.[23] On August 21, 2002, the trial court granted that motion. The relevant dates for the analysis of whether he was thereafter denied a speedy trial are as follows:

| | |
|---|---|
| 8/21/02 | Trial court grants motion for new trial (after hearing) |
| 9/20/02 | State files notice of appeal and motion for leave to appeal |
| 3/24/03 | Court of Appeals denies leave to appeal |
| 6/19/03 | Trial court sets a re-trial date of 11/3/03 |
| 10/3/03 | Parties file joint motion for continuance of trial |
| 10/3/03 | Trial court grants joint motion and continues trial until 3/8/04 |
| 3/8/04 | Schlee files motion to dismiss on speedy trial grounds |
| 3/8/04 | Trial court denies motion to dismiss |
| 3/8/04 | Re-trial begins |
| 3/19/04 | Jury returns guilty verdict in retrial & Schlee sentenced to 15 years to life (with credit for 894 days served) |

      In *Doggett v. United States*, 505 U.S. 647, 652, n.1 (1992), the Supreme Court noted that a delay of one year is generally considered "presumptively prejudicial" and enough to trigger a *Barker* review. However, the mere passing of a one-year threshold does not necessarily indicate prejudicial delay. *Wood v. Vasbinder*, 310 Fed.Appx. 861, 864 (6th Cir. 2009) (noting that the delay found to be prejudicial in *Doggett* was eight and a half years, whereas a five-year delay in *Barker* was found to not violate the right to a speedy trial).

---

[23] The *Brady* material had to do with a report of a coroner that was in the prosecution's possession but not disclosed to petitioner. The transcript of the hearing on the motion for new trial is contained in this record at Doc. No. 75-1 and 75-2.

In this case, petitioner argues that the 19-month delay from August 21, 2002 to March 8, 2004 is presumptively prejudicial. (Traverse, Doc. No. 46 at 230.)[24] Of the 564 days (or close to 19 months) that elapsed between the order for and the commencement of the new trial, 185 days (a little over six months) were devoted to the time during which the State legitimately, although unsuccessfully, sought leave to appeal the granting of a new trial and another 125 days (close to four months) were devoted to Schlee's attempt to obtain DNA testing. Therefore, the actual delay was at most 254 days (about 8½ months).[25] That is not a presumptively prejudicial delay.

Since there is no triggering delay under *Barker*, this Court need not consider the other factors and concludes that plaintiff was not denied his right to a speedy trial.

**Accordingly, Objections 24, 25, 26, 27, and 28 (Doc. No. 80 at 119-127) are rejected.**

### c.    *Ground Seven* (Objections 34, 35)

Petitioner asserts the following two additional related objections regarding Ground Seven:

(34)    The Magistrate is clearly erroneous in not finding that Petitioner's second trial was barred by the protections of the Double Jeopardy Clause.

(35)    The Magistrate is clearly erroneous in failing to address Petitioner's specific issue in his double jeopardy cliam, that prosecutorial misconduct, not trial error, that amounts to "overreaching" bars retrial, and that

---

[24] Petitioner asserts that, during this period, evidence obtained from the New York authorities was lost while in the custody of Lake County and his grandmother, a critical alibi witness prepared to testify that he was with her on the purported date of Carroll's killing, had died.

[25] Schlee makes two additional arguments neither of which have merit: (1) that the State should be held accountable for the delay caused by its appeal from the order granting a new trial, which it could have foregone so as to avoid delay; and (2) that the real delay was from the date of the alleged crime until the first trial.

applying *Kennedy v. Oregon* (1982) 456 U.S. 667, to include "overreaching," triggers double jeopardy protection.

Petitioner's arguments in both his original traverse and his objections are practically incomprehensible. He blames the prosecuting attorney for "prosecutorial misconduct rising to a level of 'overreaching' that delayed reversal of the first conviction for ten years" and, supposedly, now should result in a finding of double jeopardy because he was granted a new trial and, on retrial, was found guilty again. (Objections at 153.)

Notwithstanding petitioner's attempt to "breathe[ ] new life" (Traverse, Doc. No. 46 at 300) into his double jeopardy claim, the claim has no merit because it is nothing more than a veiled attempt to claim prosecutorial misconduct "based on a relatively new but emerging jurisprudence supporting the proposition that prosecutorial misconduct can trigger the protections of the Double Jeopardy Clause of the Fifth Amendment precluding a second trial[,]" (Objections at 151), a claim now barred because it was not raised in the State court. In addition, the "emerging jurisprudence" relied upon by the petitioner to make this argument has no precedential value in this Court. *See, e.g.*, *State v. Lettice*, 221 Wis.2d 69, 585 N.W.2d 171 (Wis.App. 1998); *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (Pa. 1992).

This Court has reviewed the R&R's discussion regarding petitioner's Ground Seven double jeopardy claim and finds no error.

**Accordingly, Objections 34 and 35 (Doc. No. 80 at 148-154) are rejected.**

33

### III. CONCLUSION

For the reasons set forth above, petitioner's objections to the R&R are rejected. The recommendation to deny the petition for writ of habeas corpus is accepted and this case is dismissed.

Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed.R.App.P. 22(b).

**IT IS SO ORDERED**.

Dated: March 8, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**